1

**SCHIAN WALKER, P.L.C**.
3550 NORTH CENTRAL AVENUE, #1700
PHOENIX, ARIZONA 85012-2115

2

TELEPHONE: (602) 277-1501
FACSIMILE: (602) 297-9633

3

E-MAIL:  ecfdocket@swazlaw.com

4

MICHAEL R. WALKER, #003484
MARK C. HUDSON, #020500

5

Attorneys for Defendants

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF ARIZONA

8

FIDELITY NATIONAL FINANCIAL, INC., *et al*,

No. CV03-1222-PHX-RCB

9

Plaintiffs,

**FRIEDMANS' REPLY TO FIDELITY'S OPPOSTION TO FRIEDMANS' MOTION TO STRIKE**

10

vs.

11

COLIN H. FRIEDMAN, *et al*,

12

Defendants.

13

14

  Defendants **Friedmans**[1] reply to **Fidelity's** *Opposition to Judgment Debtors ...*

15

*Motion to Vacate Fidelity's Certification of Registration of Judgment ...* [DE 178] (referred to

16

herein as Fidelity's "**Response**" to the Friedmans' "**Motion to Strike**").  Fidelity's Response

17

offers gratuitous opprobrium directed at the Friedmans but no rebuttal to the Motion to Strike,

18

which should be granted accordingly.

19

  The parties agree that Fidelity obtained the **Arizona Judgment** on November 14,

20

2002 when it registered (the "**Registration**") the **California Judgment** in this Court.  Fidelity

21

amplifies this: "since registering the judgment," it has engaged in a multitude of activity

22

attempting to collect that judgment.  If anything, Fidelity's assertion regarding its enforcement

23

activity is modest:  approximately 15 writs of garnishment, 7 writs of execution, 11 motions for

24

judgment debtor examinations, and 3 motions or subpoenas directed at third parties.   The

25

Friedmans' Reply follows below.

26

---

[1] Terms that are capitalized and in bold have the same meaning as in the Motion to Strike.

**I.     FIDELITY DID NOT RENEW THE 2002 ARIZONA JUDGMENT BY ACTION.**

The Court directed the parties to address the issue of whether the Arizona Judgment was "renewed by action thereon" prior to November 14, 2007, pursuant to A.R.S. § 12-1611: "*A judgment may be renewed by action thereon at any time within five years after the date of judgment.*"[2]  Resolution of this issue turns on meaning of the word "action."  The statute does not define that word nor does any Arizona case apparently define it.  However, the Arizona Revised Statutes ("**A.R.S.**") and Arizona Rules of Civil Procedure ("**A.R.C.P.**") contain an abundance of references to the term that make it clear that "action" refers to a lawsuit; and not other *activities*.  These references are buttressed by case law from Arizona and other states.

A.     *The A.R.S. and A.R.C.P. Consistently and Repeatedly State That the Meaning of the Word "Action" is a Lawsuit Initiated by a Complaint.*

The A.R.S. and A.R.C.P. extensively and consistently have one critical factor in common that addresses the definition of an "action":  an **action** involves a lawsuit, which is initiated by the filing of a complaint.  The mere filing of a writ or a motion is not an action within the meaning of any provision of the A.R.S. or A.R.C.P.  Among countless examples are the following.  Arizona allows but one "form of **action**" – called a "civil **action**" which is used "for all suits of a civil nature."  A.R.C.P. 1 & 2.  An **action** is "'commenced by filing a *complaint* with the court."  A.R.C.P.  3.  An **action** is dismissed if the complaint and a summons are not served within 120 days of the filing of the complaint.  A.R.C.P. 4(i).  The complaint, answer, reply to counterclaim, answer to cross-claim, third party complaint, and a third-party answer are the only pleadings allowed in an **action**.  A.R.C.P. 7(a).  (Emphasis added above.)

A.R.S. § 12-501, *et seq,* ("Limitations of **Actions**") is a compendium of statutes that limit the time period during which an **action** must be brought on a cause of action before it is time barred.  Other limitations exist elsewhere in the A.R.S.  Some examples include A.R.S.

_____

[2] This provision has been a part of the Arizona statutes since 1913.  The present version is essentially the same as its predecessor versions.

§§ 12-731(B); 44-1009; 44-3241(B); and 47-411. Similarly, A.R.S. § 12-561 *et seq*, provides special rules on **actions** brought against health care providers. Indeed, the A.R.S. contain many provisions that set forth who may bring an **action**, against whom it may be brought, and for what purpose. Just a few examples include A.R.S. §§ 44-1567(A); 44-7501(H); and 46-455(B).

If the Arizona Legislature and Supreme Court had intended that the word "action" as used in § 12-1611 was to have a meaning different from all other provisions of the A.R.S. and A.R.C.P., they could, should, and would have said so. That they have not done so, shows that the meaning of "action" in § 12-1611 is the same as everywhere else in the A.R.S. and A.R.C.P. Case law from Arizona, and other states, consistently demonstrates that the word **action** in this context is a special term that means a complaint and a lawsuit.

   *B.*   *Case Law From Arizona and Other Jurisdictions Supports That An Action Requires the Filing of a Lawsuit, Not Simply the Activity of Collection.*

The Friedmans have located no Arizona cases that directly address this issue. Several cases expressly discuss renewal by **action** pursuant to § 12-1611, and the **action** involved was the filing of a complaint; however, no case discusses judgment renewal by any activity other than a complaint – referred to herein as "renewal by *activity*" – including activity related to enforcement of the judgment. *See Brandt v. Meade*, 17 Ariz. 34, 35-37, 40-41, 148 P. 297, 298-99, 300 (Ariz. 1915); *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 179, 98 P.3d 572, 614-616, (Ariz. App. 2004) (complaint in intervention); *Hall v. World Savings & Loan Ass'n*, 189 Ariz. 495, 498-9, 502, 943 P.2d 855, 858-9, 862 (Ariz. App. 1997).

All of these cases infer that renewal by action requires a new lawsuit and complaint. As noted above, § 12-1611 has a long history. In 1915, the Arizona Supreme Court expressly described the judgment to be renewed as constituting a *cause of action*. *Brandt*, 17 Ariz. at 40-41, 148 P. at 300. It also set forth the *elements of that cause of action*, the existence of the judgment and the absence of satisfaction of that judgment. *Id.* More recently, both divisions of the Arizona Court of Appeal have made statements confirming their understanding

that there has been no change since 1915; an **action** being a lawsuit initiated by a complaint, consistent with the A.R.S. and the A.R.C.P.   The court in *Hall* stated that

> [A] judgment may be renewed *by filing a lawsuit thereon* or by filing an affidavit of renewal with the clerk of the appropriate court.

*Hall*, 189 Ariz. at 502, 943 P.2d at 862 (emphasis added).  The Court in *Assoc'd Aviation* stated:

> "[e]very judgment gives rise to a *cause of action* to enforce it, *called an action upon a judgment* ... 'The main purpose of an action on a judgment is to obtain a new judgment' … Generally, an *action* on a judgment can only be *brought against* the defendant of record in the judgment … The reasoning … is obvious 'It is a violation of due process for a judgment to be binding on a litigant who was not a party'

*Assoc'd Aviation*, 209 Ariz. at 180, 98 P.3d 572 at 615 (emphasis added) (quote in original, citation omitted).  While neither court addressed the precise issue before this court, it is clear that both envisioned "action on a judgment" to necessarily mean a new lawsuit initiated by a complaint, not *activity* in aid of enforcement of the existing judgment.

Unlike in Arizona, the issue before the Court has been addressed more directly in other states.  For example, in Minnesota, "a party may bring an action to renew a judgment, provided that (1) the action is commenced within 10 years after entry of the original judgment, and (2) the party *complies with all the requirements for commencing a civil action.*"  *Shamrock Dev., Inc. v. Smith*, 737 N.W. 372, 376 (Minn. App. 2007) (emphasis added).

Under Indiana law, "proceedings supplemental" (a garnishment action in that case), are initiated by motion and "are a continuation of the underlying claim on the merits – not an independent action" and "[b]ecause proceedings supplemental are a continuation of the original action, *rather than an **'action'** on a judgment* of a court of record, they are not subject to the statute of limitations in Ind.C. § 34-11-1-11."  *Lewis v. Rex Metal Craft, Inc.*, 831 N.E. 812, 817, 821 (Ind. App. 2005) (emphasis added) (quote in original; citation omitted).

Consistent with *Assoc'd Aviation* (*i.e.*, that a judgment creates a cause of action to enforce it), Utah law provides that "[a] money judgment forms the basis for but two legal

-3-

1  proceedings: (1) *a suit thereon,* brought within eight years, *wherein it forms the basis or chose*

2  *in action for a new judgment ...*"  *Mason v. Mason*, 597 P.2d 1322, 1324 (Utah 1979) (emphasis

3  added) (*citing*, *inter alia, Michely v. Honolulu, Limited*, 567 P.2d 824 (Hawaii 1927); *State ex*

4  *rel. Comm's of Land Office v. Whitfield*, 193 P.2d 306, 200 Okl. 300 (Okl. 1948).

5         California actually has a definition of **action** which comports with the above:

6         An action is an ordinary proceeding in a court of justice by which

7         one party prosecutes another for the declaration, enforcement, or
protection of a right, the redress or prevention of a wrong, or the

8         punishment of a public offense.

9  CalC.Civ.Proc. § 22.  Under California law, a "*separate independent* action 'on' a judgment" is

10  entirely separate from "statutory proceedings to enforce" the underlying judgment.  *Barkley v.*

11  *City of Blue Lake*, 23 Cal.Rptr.2d 315, 317 (App. 1993) (emphasis in original).  Accordingly,

12  the action on the judgment requires service of a summons and complaint on the defendant

13  judgment debtor.  *Fidelity Creditor Serv., Inc. v. Browne*, 106 Cal.Rptr.2d 854, 858-859 (App.

14  2001) (*citing, Hill v. City Cab etc. Co.*, 79 ca. 188, 190-191 (1889).  Moreover, a "*separate*

15  *independent action*" on a judgment is entirely distinct from the renewal of that judgment.

16  *Pratali v. Gates*, 5 Cal.Rptr.2d 733, 736-737 (App. 1992).

17         Fidelity's contrary argument relies on Black's Law Dictionary 18 (6th ed. 1997)

18  but, as with its failure to cite California law regarding when enforcement of judgments may

19  commence (*see*, § II below), Fidelity omits the relevant part:

20         Action … term in its usual legal sense means a lawsuit brought in a
court; a formal complaint within the jurisdiction of a court of law …

21         The legal and formal demand of one's right from another person or

22         party made and insisted on in a court of justice … An ordinary
proceeding in a court of justice by which one party prosecutes

23         another … ".

24  (Emphasis added.)  The authorities cited above show the universality of the distinction between

25  *an action on a judgment* and *activities or procedures to enforce* that judgment.  The former does

26  not include the latter.  An action on a judgment requires a separate lawsuit on that judgment.

-4-

1    Since no such independent lawsuit was filed by Fidelity, there was no renewal by action.

2          C.    *A Contrary Interpretation is Inconsistent With the Strict Requirements of A.R.S.*

3    *§ 12-1612 – Registration by Affidavit.*

4          As discussed in the Motion to Strike, A.R.S. § 12-1612 sets forth a comprehensive

5    list of information that must be provided by the judgment creditor in a renewal affidavit.  It also

6    requires that this affidavit must be filed within a specific 90-day time frame, which ends upon

7    the expiration date of the Arizona judgment.  These highly specific requirements exist to ensure

8    that the judgment debtor and third parties have necessary information about the judgment being

9    renewed.  *Weltsch v. O'Brien*, 25 Ariz. App. 50, 53 (Ariz. App. 1975).  A separate lawsuit

10   initiated on the judgment is relatively easy to recognize and, accordingly, it is equally easy to

11   determine, from the existence of that new action, if and when the judgment has expired.

12         Contrast that straightforward result with Fidelity's position that some other *activity*

13   (*e.g.* writs of garnishment or execution, *subpoenas duces tecum*, document production requests,

14   depositions, etc.), may accomplish renewal.  Unlike a signed affidavit or a signed complaint,

15   such *activity* does not require a signature attesting to the accuracy of factual information vis-à-

16   vis the judgment.  Nor does such *activity* provide the same information as required in a renewal

17   affidavit or complaint.  The nature of some *activities* (*e.g.* depositions) mean that a third party

18   and often the court will not even know that they occurred.  Other *activities* (*e.g.* a writ of

19   garnishment) may provide some of the information required in a renewal affidavit but not all of

20   it.  How could this incomplete information be considered sufficient?

21         As with renewal by affidavit, the initiation of an action by filing a complaint is a

22   clear indication of what the judgment creditor is asserting and a clear and unambiguous

23   indication that the judgment debtor and third parties have received notice equivalent to that

24   required by § 12-1612.  The opposing argument – that papers used in the aid of collection *might*

25   provide for renewal by action, *if* they provide notice required for renewal that is sufficient –

26   does not work.  The problem is obvious from this case – the adequacy of notice is an issue of

-5-

fact in every instance where renewal by *activity* is asserted; therefore making it difficult or impossible for persons to know if that *activity* succeeded in renewing the judgment and requiring litigation to resolve this factual matter.  Rather than the clear, attested-to, statement of facts set forth in an affidavit or complaint; an incomplete, confusing, and unattested factual basis is presented under a renewal by *activity* regime.  That result, the necessary result of mere *activity* possibly renewing a judgment, or possibly not doing so, fails to provide notice or clarity.

The problem is compounded given the possibility of *multiple potential* judgment renewals occurring through *activity*.  Under this approach, a judgment *might* renew several times in a five year period but how could any person tell – with certainly – if any *activity* successfully renewed the judgment and which was the last to do so (in order that one could tell when the judgment would expire in five years).  Given the multitude of Fidelity's *actions* in the case involving the Arizona Judgment, the Friedmans are left asking,  if not on November 14, 2007, when (did) does the Arizona Judgment expire?

If renewal were accomplished by mere *activity*, difficult questions remain.  Why should § 12-1612 require so much information and have such a restrictive time period during which renewal must occur if renewal by *activity* can effect a renewal at any time, indeed at multiple times, and without providing the same information.  Why should § 12-1612 exist at all, if renewal can be accomplished so easily through renewal by *activity*.  Indeed, if renewal is to be accomplished so easily and so often by minimal *activity*, why is there a need for § 1551(A), *i.e.*, for judgments to expire at all.

The answer to all of these difficult questions is that there is no such thing as renewal by *activity*.  Renewal by action requires an **action** – a new lawsuit.  The word "action" is best interpreted in the context from which it arises, a "cause of action" which means that it requires a very specific action, a new lawsuit.  This has been the law in Arizona since at least 1915.  Renewal by *activity* opens Pandora's box.  Doing some undefined thing, with the success of the purported judgment renewal then depending upon a factual determination of whether that

-6-

1    thing was adequate or sufficient, is not workable, dependable, consistent, or predictable; nor is it

2    what was intended by the Arizona Legislature and Supreme Court.  There was no renewal by

3    action here and the Friedmans request that the Court enter its ruling declaring this.

4    **II.     THE CERTIFICATION WAS NOT A "REREGISTRATION" OF THE**

5    **CALIFORNIA JUDGMENT AND DID NOT CREATE A NEW ARIZONA JUDGMENT.**

6                Fidelity admits that it obtained the Arizona Judgment in November 2002 and

7    began enforcing it almost immediately.  (*See* Response at 2.)  Despite all of its activity designed

8    to enforce the (2002) Arizona Judgment, Fidelity makes the incredible assertion that the (2007)

9    Certification (re)registered the California Judgment and created (in an unexplained fashion) a

10   second Arizona judgment.  In positing this argument, Fidelity manages to misstate both Arizona

11   and California law, when it cites any legal authority.  In several instances it does not.

12               Fidelity provides no authority for the proposition that it is entitled to two

13   judgments on the same cause of action.  Likewise, there is no authority cited for "reregistration"

14   of a previously registered foreign judgment.  Neither does Fidelity offer authority explaining

15   what reregistration is.

16                Fidelity next provides a misleading discussion of two entirely consistent Arizona

17   cases, which Fidelity nonetheless asserts are contradictory, and then attempts to rely on just one

18   of them.  Its discussion of the *Day* and *Grynberg* decisions is a failed attempt to resuscitate from

19   one of its fatal defects, the argument that the 2007 Certification somehow created another, new

20   judgment.  However, the Certification was filed too late to obtain an Arizona judgment.

21               Both *Day* and *Grynberg* hold that the **cause of action** to enforce a foreign

22   judgment accrues under Arizona law when the judgment becomes enforceable under the law of

23   the state that initially entered that foreign judgment.  *Day v. Wiswall*, 11 Ariz. App. 306, 313

24   (App. 1970) ("In an action on a foreign judgment its validity and finality are to be tested by the

25   law of the jurisdiction where such judgment was rendered."); *Grynberg v. Shaffer*, 216 Ariz.

26   256, 260, 165 P.3d 234, 238 (App. 2007) ("… finality attaches to a foreign judgment when it is

1    issued by the trial court and is enforceable in the issuing jurisdiction.")

2            Both courts looked to then-prevailing state law in the state rendering the judgment.

3    In 2007, the *Grynberg* Court relied on Colo. R. Civ. P. 62(d), which requires a supersedeas bond

4    to stay enforcement of a judgment pending appeal. *Id.*, 216 Ariz. at 260, 165 P.3d at 238.

5            As in Colorado (and Arizona), California law also provides that a judgment is

6    enforceable upon entry unless an "undertaking" (akin to a supersedeas bond) is posted:

> 916.   (a) Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from … including enforcement of the judgment or order, …
> 917.1.   (a) Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for any of the following:   (1) Money or the payment of money, whether consisting of a special fund or not, and whether payable by the appellant or another party…
> (b) The undertaking shall be on condition that if the judgment or order or any part of it is affirmed or the appeal is withdrawn or dismissed, the party ordered to pay shall pay the amount of the judgment or order, or the part of it as to which the judgment or order is affirmed, … together with any interest which may have accrued pending the appeal … and costs which may be awarded against the appellant on appeal … The undertaking shall be for double the amount of the judgment ...   The liability on the undertaking may be enforced if the party ordered to pay does not make the payment ...
> (Emphasis added.)

19   Cal.C.Civ.Proc. §§ 916(a), 917.1(a)(b).  This has been the law in California since at least 1933.

20   *See e.g.*, *Hasenhahl v J. D. Halstead Lumber*, 131 Cal. App. 224, 21 P.2d 120 (App. 1933); *see*

21   *also Grant V. Superior Court*, 275 Cal.Rptr. 564, 568 (App. 1990) (*citing, Cunningham v.*

22   *Reynolds* 133 Cal.App. 148, 150-151, 23 P.2d 837(1933)) (purpose of statute is to "protect the

23   judgment … from becoming uncollectible" pending the appeal).

24           The *Day* court inexplicably relied upon Cal.C.Civ.Proc. § 1049 (*see* Response at

25   6:22-23) which is inapposite because it does not address, much less govern, when a money

26   judgment first becomes enforceable.   That statute simply states that the life of an action

-8-

1   continues up to the final appeal.  Fidelity relies on an inapposite California case, *Turner v.*
2   *Donovan*, 52 Cal. App. 2d 236, 238 (1942), to argue that enforcement of the California
3   Judgment did not commence until the appeal was final.  However, *Turner* did not involve
4   enforcement of a judgment, much less when enforcement may commence; rather it involved an
5   action (a new lawsuit) on the judgment.  *Id.*  ("The question here is not whether respondents
6   were entitled to an execution ... enforcement of a judgment by execution and by action cannot
7   properly be placed upon the same basis since they are different both in theory and results.")
8   *See¸* discussion of CalC.Civ.Proc. § 22; *Barkley*; *Fidelity Creditor Serv.*; and *Pratali*, *supra*.

9           None of the defendants in the 2006 Judgment (including the Friedmans) posted a
10  supersedeas bond so the California Judgment was immediately enforceable.  Therefore, the 2007
11  Certification could not have resulted in an Arizona judgment because it was too late, having
12  occurred more than four years after entry of the California judgment.  A.R.S. § 12-544.

13          The California District Court hearing the 2006 Action was aware of California
14  law.  Its *Order Allowing Plaintiff to Register its Judgment in Arizona* expressly ordered that:

15                  Fidelity … will refrain for a period of thirty (30) days from August
16                  22, 2002 from levying upon any disclosed assets of the Debtors.

17  *See* copy of order attached to Certification.  The court knew that Fidelity could otherwise
18  immediately enforce the California Judgment.  The above language would not have been
19  necessary if the appeal (which was not finally decided until May 15, 2003) stayed enforcement.

20          Fidelity's position is not simply disingenuous, it demonstrates a lack of candor –
21  because Fidelity knew that it could commence enforcement upon entry of judgment and, indeed,
22  actually did commence enforcement (*e.g.*, writs of garnishment and subpoenas) months before
23  the May 15, 2003 date that it now says was the date it was entitled to begin enforcement (and
24  years before it claims to have informed this Court in 2007 that the appeal was final).  *See* docket
25  in these proceedings.  Fidelity incongruously (i) asserts that it immediately began enforcement
26  activity, including recording of the Arizona Judgment in November 2002, but then (ii) argues

1   that the California Judgment was not final and enforceable until May 2003.

2       Fidelity asserts that it filed the Certificate to certify that the appeal was final – an
3   event that had occurred some four years earlier.  This assertion is neither relevant, nor credible
4   based upon Fidelity's intervening activity (147 docket entries in these proceedings, almost
5   entirely related to Fidelity enforcement *activities*, predate the Certificate).  Finally, if Fidelity
6   truly believed that a California judgment is not enforceable until appeals are resolved, it would
7   have known that recording the January 12, 2007 preliminary injunction on March 22, 2007 was
8   also improper because that order was appealed and the appeal was not resolved until August 20,
9   2007.  The 2007 Certification did not create a new, second Arizona judgment.

10  **III.   THE 2007 CERTIFICATION DID NOT RENEW THE 2002 ARIZONA**
11  **JUDGMENT.**

12      The Supreme Court of Arizona has held that the requirements of A.R.S. § 12-1612
13  are strictly enforced.  *Fay v. Harris*, 64 Ariz. 10, 13, 164 P.2d 860, 861 (1945).  Fidelity admits
14  that it failed to comply with § 12-1612 but asserts that its errors were merely minor correctable
15  "technical" deficiencies.  Unlike the circumstances in the case law it cites allowing for minor
16  correction of technical errors in a renewal affidavit, such as incorrect calculations, however,
17  Fidelity's errors are not minor.  Fidelity's errors are both numerous and major:

18      1.   Fidelity failed to provide a renewal affidavit; there is no affidavit or any
19  other signed attestation of the few facts that Fidelity allegedly provided.

20      2.   Fidelity failed to disclose facts required in a renewal affidavit, *e.g.,* that it
21  had collected on the judgment, recorded the judgment in two Arizona counties, and recorded the
22  related (at least from Fidelity's perspective) preliminary injunction.

23      3.   Fidelity filed it at the wrong time, months too early.

24      Moreover, the caption of the Certification is inherently misleading.  Fidelity's
25  contradictory arguments in the Response only amplify the contradictions and confusion.
26  According to Fidelity, it accomplished both "reregistration" and renewal of the same judgment.

If Fidelity can't even decide if the Certification was a (re)registration of a new judgment or a renewal of the existing Arizona Judgment, how is anyone else supposed to figure it out.

Whatever Fidelity was trying to accomplish with the Certification, it did not comply with § 12-1612 and did not renew the Arizona Judgment. There was no affidavit; required information was omitted; and Fidelity filed the Certification four months too early. Fidelity offers no basis to conclude that the provisions of § 12-1612, with which Fidelity failed to comply, should not be strictly enforced. Moreover, even after April 5, 2007, Fidelity had over seven months in which to file a renewal affidavit but it failed to do so.

Fidelity asserts, with no authority, that Rule 60(a) permits it to correct these "clerical" errors. The errors were <u>not</u> in the judgments entered by any court; they are errors made by Fidelity in filing the Certificate. These errors are <u>not</u> clerical; they are substantive and substantial. Fidelity does not even try to explain the absence of an affidavit or how the date could be "corrected" – unsurprising since this would require falsification of the record.

Fidelity asserts that its taking of a deposition in the 90-day period preceding expiration of the Arizona Judgment served to renew it. This is apparently based upon the renewal by *activity* theory; however, as discussed above, a deposition is among the least likely ways that notice of renewal could be provided. Finally, Fidelity did not file any documents in the 90 days prior to November 14, 2007. The only record of an examination is a Minute Entry.

Fidelity made several severe errors in the Certification. It admits that it failed to comply with the requirements for a renewal by affidavit. It fails to show that the requirements of the statute should not be strictly enforced or to justify its deficiencies.

**IV.   CONCLUSION.**

The Arizona Judgment expired on November 14, 2007 and is not enforceable in Arizona. Fidelity's rebuttal consists of prejudicial and inadmissible factual allegations; and confusing, contradictory, misleading, and ultimately unconvincing legal arguments. Therefore, the Motion to Strike should be granted and the Arizona Judgment declared unenforceable.

1              DATED this 4th day of February, 2008.

2                                SCHIAN WALKER, P.L.C.

3

4                              By /s/ MARK C. HUDSON, #020500
                                      Michael R. Walker

5                                     Mark C. Hudson
                                     Attorneys for Defendants

6

7 COPY of the foregoing hand-delivered
  this 4th day of February, 2008, to:

8

9 Honorable David K. Duncan
  Sandra Day O'Connor Courthouse
  401 West Washington

10 Phoenix, Arizona 85003-2158

11 and COPY e-mailed, faxed and mailed to:

12

13 John J. Hennelly, Esq.
   Orlando F. Cabanday, Esq.
   Janice M. Kroll, Esq.

14 Hennelly & Grossfeld, LLP
   4640 Admiralty Way, #850

15 Marina del Rey, California 90292
   Attorneys for Plaintiffs

16 FAX:  (310) 305-2116
   jhennelly@hgla.com

17 ocabanday@hgla.com
   jmkroll@hgla.com

18

   /s/ JULIE LANGSTRAAT
19 Friedman\Fidelity\Plead-AzDC\ReplyRespMtnQuash

20

21

22

23

24

25

26