1    WO

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       FOR THE DISTRICT OF ARIZONA

9

10

11

12   Fidelity National Financial, )
     Inc.,                         )
13                   Plaintiff,    )      No. CIV 03-1222-PHX-RCB (DKD)
                                   )
14          vs.                    )          O R D E R
                                   )
15   Colin H. Friedman, *et al.*   )
                                   )
16                   Defendants.   )
     _____)

17

18        The dispute presently before the court is the latest in a

19   long, embittered battle between plaintiffs Fidelity National

20   Financial, Inc. and Fidelity Express Network, Inc. ("Fidelity") to

21   enforce a nearly $8.5 million dollar judgment, plus interest, which

22   was entered in their favor and against the Friedman defendants,

23   among others, in the United States District Court, Central District

24   of California on July 12, 2002 ("the California judgment").[1]  On

25   _____

26        [1]    That judgment was actually rendered against "Colin H. Friedman,
     individually and as trustee of the Friedman Family Trust UDT, . . . , Hedy Kramer
27   Friedman, individually and as trustee of the Friedman Family Trust UDT, . . . ,
     Farid Meshkatai, and Anita Kramer Meshkatai, individually and as trustee of the
28   Anita Kramer Living Trust . . . , and each of them, jointly and severally[.]" Fid.
     Nat'l Fin. Inc. v. Friedman, No. 00-cv-06902-GAF-RZ (C.D.Cal. 2002) (doc. 235).

1  November 14, 2002, Fidelity filed a "Certification of Judgment" in

2  this court "allow[ing] [it] to register" that California judgment

3  in Arizona.[2] See Doc. 1.  Thereafter, Fidelity actively engaged in

4  numerous collection efforts in this district court.  As part of

5  those efforts, on April 5, 2007, Fidelity filed a "Certification of

6  Judgment for Registration in Another District (dated January 1,

7  2007)and Renewal of Judgment in District of Arizona" (doc. 148).

8  On January 10, 2008, the Friedmans filed a  "Motion to Quash,

9  Vacate and/or Strike [that] Certification of Judgment" ("motion to

10 quash").  Doc. 171.  This court referred that motion to Magistrate

11 Judge David K. Duncan, and in a Report & Recommendation ("R&R")

12 entered March 31, 2008, *inter alia*, he recommended denial.

13      Currently pending before the court is what Fidelity has styled

14 as a "Motion . . . to Affirm the Recommendations and Report . . . ,

15 and to Affirm Fidelity's Judgment"[3] (doc. 189), as well as

16 objections to that report filed by the Friedmans (doc. 188).  For

17 the reasons set forth herein, the court finds no merit to those

18 objections.  Accordingly, it agrees with the Magistrate Judge that

19 the Friedmans' motion to quash should be denied.

20                        ***Background***

21      Since registering the California judgment in this court,

22 Fidelity has been fairly aggressive in its collection efforts.  As

23 _____

24      [2]     This court, like the parties, will refer to this as the "Arizona
    judgment."

25      [3]     As the Friedmans are quick to point out, the magistrate judge referral
26  process does not contemplate such a motion.  Rather, once a party has timely filed
    its objections, as did the Friedmans, a party "may respond to [those] . . .
    objections within ten days after being served with a copy thereof."  Fed. R. Civ.
27  P. 72(b).  Thus, in accordance with that Rule, the court deems Fidelity's "Motion"
    to be a "response" to the Friedmans' objections.  And, despite what the Friedmans
28  imply, that "response" was timely in that it was filed within the time frame set
    forth in Fed. R. Civ. P. 72(b).

recounted by the Magistrate Judge, those efforts in this district "include subpoenas which were directed to relatives of the judgment debtors  served on or about March 2003, three writs of garnishment in 2003, judgment debtor examinations in 2003, a motion for the opening of a safe-deposit box in 2004, other writs of garnishment in 2004, motion practice regarding the filing [sic] applications for additional writs or [sic] garnishment in late 2004, additional debtor exams in 2006, motion practice over compliance with a third-party subpoena in 2006, additional debtor exams in 2007 and motions regarding a debtor's compliance with the same."  R&R (doc. 187) at 2:1-7.  In addition to the foregoing, "[o]n July 6, 2006, [Fidelity] filed another action against the [Friedmans and others] in the United States District Court for the Central District of California, alleging RICO violations and fraudulent conveyances in connection with their evasion of the underlying judgment."  Fid. Nat'l Fin., Inc. v. Friedman, 2007 WL 446134, at *1 (D.Ariz. 2007) ("Fidelity") (citing Fid. Nat'l Fin., Inc. v. Friedman, No. 06-cv-04271-CAS-JWJ (C.D.Cal. 2006) (citing in turn doc. # 1)).[4]

A.R.S. § 12-1551(B) provides in relevant part that "[a]n execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or . . .  an action is brought on it within five years from the date of the entry of the judgment or of its renewal."  A.R.S. § 12-1551(B) (West Supp.

---

[4]     As it did in Fidelity, "[t]he Court takes judicial notice of the related cases in the United States District Court for the Central District of California as matters of public record having a direct relation to the matter in this case between the same parties."  Fidelity, 2007 WL 446134, at *1, n.2 (citing Fed. R. Evid. 201).

1   2007).   The California judgment was "entered on the docket in this
2   case on November 14, 2002."   R&R (doc. 187) at 2.   In moving to
3   quash, the Friedmans took the position that the California judgment
4   expired on November 14, 2007, because Fidelity did not comply with
5   section 12-1551(B), and hence   "further collection efforts pursuant
6   to [that judgment] are unauthorized."   R&R (doc. 187) at 2:11.

7       As enumerated by the Magistrate Judge, first, Fidelity
8   responded that   the "Arizona judgment was renewed by action on the
9   judgment[.]"   Id. at 2:19.   Second, Fidelity argued that the
10  "California judgment was timely registered in Arizona in 2007[.]"
11  Id. at 2:19.   Third, Fidelity argued that in 2007 it "properly
12  renewed the Arizona judgment."   Id. at 2:20.   Finding that Fidelity
13  "renewed [its] judgment by action," the Magistrate Judge found "no
14  need to address" Fidelity's "last two arguments."   Id. at 2:21-22.

15      Pursuant to A.R.S. § 12-1611, "[a] judgment may be *renewed by*
16  *action thereon* at any time within five years after the date of the
17  judgment."   A.R.S. § 12-1611 (West 2003) (emphasis added).
18  Agreeing with Fidelity that its collection activities in this case
19  constituted "action thereon" within the meaning of section 12-1611,
20  the Magistrate Judge relied almost exclusively upon a July 26,
21  2005, order of this court in Gagan v. Sharer, 2:99-cv-01427-PHX-RCB
22  (doc. 241) ("Gagan").   The Magistrate Judge specifically "directed
23  the parties" to the court's holding there "'that any action upon a
24  judgment that gives notice to the judgment debtor, and other
25  interested parties, of the identity of the judgment and is within
26  five years of the date the judgment was entered, may effectuate a
27  renewal of the judgment.'" R&R (doc. 187) at 3:7-11 (quoting
28  Gagan, doc. 241 at 6).   Reasoning that the "plain meaning" of

- 4 -

section 12-1611 supports that view, the Magistrate Judge found no need to "look . . . further for [the statute's] meaning." Id. at 3:11 and 13 (citation omitted).

To bolster his conclusion, the Magistrate Judge further reasoned that "[n]o policy argument compels a contrary construction." Id. at 3:15. The Magistrate Judge noted that the twin purposes of section 12-1611's five year time limitation are "to allow for finality and to provide for notice to judgment debtors of continued collection efforts." Id. at 3:16-17. Although not framed expressly in terms of notice, the Magistrate Judge found that the Friedmans were "well informed about the status of the collections efforts[,]" as is evidenced by the fact that they "actively litigated issues" pertaining to what the Magistrate Judge aptly described as Fidelity's "vital and ongoing efforts [in this case] to collect on a judgment[.]" Id. at 3:19-21.

As the Magistrate Judge construed the Friedmans' argument, they read section 12-1611 to require "a separate civil action based on the judgment" and not the collection actions taken in this case. Id. at 3:4. The Magistrate Judge succinctly rejected that view, however, stating that "[n]o Arizona authority dictates [that] interpretation." Id. at 3:5-6.

Not only did the Magistrate Judge agree with Fidelity that its collections efforts in this case amount to "action" renewing the judgment within the meaning of section 12-1611, but he also found that Fidelity's "second argument, that [its] 2006 California action constitutes an action renewing the judgment, is also well taken." Id. at 3:22-23. Despite the Friedmans' contrary assertion, the Magistrate Judge explicitly found that "[t]here can be little doubt

1   that the 2006 [California] action is based on an effort to collect
2   on the 2002 judgment." Id. at 4:10-11.  The Magistrate Judge also
3   relied upon this court's prior statement that the California
4   action was "in connection with [judgment debtors'] evasion of the
5   underlying judgment." Id. at 4:15 (quoting Fidelity, 2007 WL
6   446134, at *1).  Finally, the Magistrate Judge discounted the
7   Friedman's remaining argument that because the 2006 action was
8   brought in California, it cannot have the effect of renewing the
9   judgment under section 12-1611, stressing that "this . . . case
10  . . . is itself predicated on a California judgment." Id. at 4:19.
11      As will be more fully discussed below, the Friedmans
12  strenuously object to the Magistrate Judge's recommendation that
13  this court deny their motion to quash.  The Friedmans contend that
14  after de novo review, this court should "enter an order declaring
15  the Arizona Judgment to be expired and unenforceable."  Objections
16  (doc. 188) at 1:17-18.    Alternatively, they "request" that this
17  court certify at least four questions of law to the Arizona Supreme
18  Court in accordance with A.R.S. 17A - Rule 27.  Id. at 1:18.

### *Discussion*

### I.  *Standard of Review*

21      In accordance with 28 U.S.C. § 636(b)(1), which was the basis
22  for this referral, the court "shall make a de novo determination
23  of those portions of the report or specified proposed findings or
24  recommendations to which objection is made."  28 U.S.C. §
25  636(b)(1) (West 2006); see also Fed. R. Civ. P. 72(b) (same).  "De
26  novo review means that the court must consider the matter anew, as
27  if no decision previously had been rendered." Olson v. Lemos,
28  2008 WL 782724, at *1 (E.D.Cal. 2008) (citing United States v.

1  _Silverman_, 861 F.2d 571, 576 (9th Cir. 1988)).   "Although a de novo

2  hearing is not necessary, the district court must arrive at its

3  own independent conclusion about those portions of the magistrate

4  judge's findings or recommendations to which a party objects."

5  _Id._ (citing _United States v. Remsing_, 874 F.2d 614, 616 (9th Cir.

6  1989)).   Further, also in accordance with section 636(b)(1)(B),

7  this "court may accept, reject, or modify, in whole or in part,

8  the findings or recommendations made by the magistrate judge."   28

9  U.S.C. § 636(b)(1)(B) (West 2006); _see also_ Fed. R. Civ. P. 72(b)

10  ("The district judge may accept, reject, or modify the recommended

11  decision, receive further evidence, or recommit the matter to the

12  magistrate judge with instructions.")

13  **_II.  Objections_**

14     **_A.  Renewal By Action_**

15        **_1. Collection Efforts_**

16     According to the Friedmans, the Magistrate Judge "[e]rred in

17  [c]oncluding [t]hat [c]ollection [a]ctivity [u]ndertaken in [a]id

18  of [c]ollection of the Arizona [j]udgment served to [r]enew [t]hat

19  [j]udgment."  Obj. (doc. 188) at 1:21-22.   The Friedmans

20  strenuously disagree with Magistrate Judge's statement that "no

21  Arizona authority dictates [their] interpretation[,]"  R&R (doc.

22  187) at 3:5-6,  which is "that the word 'action' in A.R.S. § 12-

23  1611 requires a separate civil action (rather than collection

24  _activity_) [.]"  Obj. (doc. 188) at 1:23-24.   From the Friedmans'

25  perspective, "[t]he reality is that the converse . . . is true –

26  there appear[] to be no published decisions . . . where a creditor

27  has taken the position, or a court ruled, that 'collection

28  activity' constituted sufficient action to renew a judgment."   _Id._

1    at 2:2-5.  In this regard, the Friedmans claim that that

2    Magistrate Judge "ignore[d]" their "authority from Arizona and

3    elsewhere that established what constitutes an action to renew a

4    judgment."  Id. at 2:9-10 (footnote and citation omitted).

5    Instead the Magistrate Judge improperly, in the Friedmans' view,

6    relied upon the 2005 unpublished Gagan order.

7        The Friedmans' objections are baseless.  First of all, it was

8    not error for the Magistrate Judge to disregard the Friedman's

9    authority because none of it is directly on point.  The Friedmans'

10   reliance upon the meaning of "action" in other Arizona statutes is

11   misplaced.  The various Arizona statutes to which the Friedmans

12   cite uniformly refer to "*a* action" or "*an* action."  See, e.g.,

13   A.R.S.§ 12-731(B) (West 2003)(emphasis added) ("**A** civil action

14   under this section may not be commenced later than one year after

15   the date upon which the plaintiff first has a reasonable

16   opportunity to discover the violation."); A.R.S. § 44-1009 (West

17   2003) (emphasis added) ("A claim for relief with respect to a

18   fraudulent transfer or obligation under this article is

19   extinguished unless **an** action is brought[]" within the time frames

20   specified therein); and A.R.S. § 44-1567(A) (West 2003) (emphasis

21   added) ("Any wholesaler may bring **an** action against a supplier or

22   a supplier may bring **an** action against a wholesaler for violation

23   of § 44-1566 in any court of competent jurisdiction and  may

24   recover damages sustained.")  In sharp contrast, section 12-1611

25   refers only to "action" generally.  The word "action" as it

26   appears in that particular statute is not modified by an article

27   such as "a" or "an," as it is in the statutes to which the

28   Friedmans cite.  If the Arizona Legislature had intended the word

1    "action" as used in section 12-1611 to mean "an action," it could

2    easily have included that modifying article, but it did not.

3         The Friedmans' reliance upon the Arizona Rules of Civil

4    Procedure ("A.R.C.P.") is similarly misplaced.   The Friedmans cite

5    to several of those Rules to support their assertion that "an

6    **action** involves a lawsuit, which is initiated by the filing of a

7    complaint."   Obj. (doc. 188), Appendix thereto at 11:14-15.

8    However, in construing section 12-1611 the court is not concerned

9    with the definition of "an action" because, as just explained,

10   that statute does not refer to "an action."   Consequently it does

11   not follow, as the Friedmans suggest, that "action" for purposes

12   of section 12-1611 also requires the filing of a complaint.

13        Nor do the cases upon which the Friedmans rely mandate a

14   different result.   In the first place, the cases outside this

15   jurisdiction are irrelevant because plainly they are not

16   construing the particular Arizona statute at issue herein, section

17   12-1611.   If any of those cases were construing statutes identical

18   or nearly identical to section 12-1611, perhaps those cases would

19   have some precedential value, but they are not.   Second, as will

20   be more fully discussed below, two of the three Arizona cases upon

21   which the Friedmans are relying, <u>Associated Aviation Underwriters</u>

22   <u>v. Wood</u>, 98 P.3d 572 (Ariz. App. 2004); and <u>Hall v. World Savings</u>

23   <u>& Loan Ass'n</u>, 943 P.3d 855 (Ariz. App. 1997), are inapplicable.

24   Hence, this court declines to, as the Friedmans urge, "infer" from

25   those cases "that renewal by action requires a new lawsuit and

26   complaint."   <u>See</u> Obj. (doc. 188) Appendix thereto at 12:23-24.   In

27   short, the Friedmans were unable to point to a single case to

28   support their argument that "action" as used in A.R.S. § 12-1611

- 9 -

1   means that a judgment creditor, such as Fidelity, must file a

2   "separate civil action[,]" and thus the Magistrate Judge's

3   contrary recommendation was in error.  Id. at 1:24.

4        The Friedmans contend that the Magistrate Judge's "reliance

5   solely on the unpublished decision in Gagan is an inadequate basis

6   for" recommending denial of their motion to quash.  Id. at 2:24;

7   and at 3:2-3.  In an effort to minimize the precedential impact of

8   Gagan the Friedmans argue, inter alia, that "[t]he text of . . .

9   Gagan . . . suggests that there were either unique circumstances

10  or that the parties failed to properly brief the issue, which may

11  have resulted in a decision that appears on its face to be

12  contrary to Arizona law." Id. at 2:17-20.  Moreover, the

13  Friedmans further contend Gagan "is not binding precedent on the

14  parties in this case, who were not parties in that case."  Id. at

15  2:20-21.  The court agrees that Gagan is "not binding

16  precedent[,]" at least in terms of engaging in de novo review.

17  See id. (emphasis added).  As more fully discussed below, however,

18  the court reaches that conclusion for different reasons than lack

19  of identity of the parties.

20       Invoking the doctrine of stare decisis, Fidelity contends

21  that "a court must give considerable weight to its own previous

22  decisions, unless and until they have been overruled or undermined

23  by the decision of a higher court, or other supervening

24  developments, such as a statutory overruling."  Resp. (doc. 189)

25  at 4:17-2 (citing Colby v. J.C. Penney Co., 811 F.2d 1119, 1123

26  (7th Cir. 1987) (Posner, J.)).  "By adopting the same interpretation

27  as this Court in Gagan," Fidelity implies that the Magistrate

28  Judge properly "followed legal precedent to find that 'action' in

1  the renewal statute includes both lawsuits and collection
2  activities and correctly found that Fidelity's judgment was
3  renewed by its collection activities." Id. at 4:20-22.

4  Repeatedly stressing that Gagan is an unpublished order, the
5  Friedmans counter that it is "not precedential 'authority" on the
6  matter – and stare decisis does not apply." Reply (doc. 190) at
7  3:2. The Friedmans also challenge Fidelity's reliance upon Colby
8  asserting that it is distinguishable because the prior decision
9  there was published, whereas Gagan was not. Additionally, the
10 Friedmans criticize Fidelity for not differentiating between the
11 persuasive and authoritative effect of prior decisions, as Judge
12 Posner was careful to do in Colby. Lastly, and from their
13 standpoint "[m]ore significantly," the Friedmans return to their
14 argument that the Magistrate Judge "ignore[d]" their "considerable
15 authority to the contrary[,]" i.e. "that mere collection activity
16 . . . does not effect a renewal." Id. at 4:1-5 (emphasis in
17 original).

18 As will soon become apparent, the parties' respective stare
19 decisis arguments suffer from the same infirmity –
20 oversimplification. "The essence of stare decisis is that the
21 mere existence of certain decisions becomes a reason for adhering
22 to their holdings in subsequent cases." Midlock v. Apple
23 Vacations West, Inc., 406 F.3d 453, 457 (7th Cir. 2005) (Posner,
24 J.) (citing, inter alia, Dickerson v. United States, 530 U.S. 428,
25 443, 120 S.Ct. 2326, 147 L.Ed.2d 405) (2000)). Simply put, "[t]he
26 bare fact that a case has been decided is a ground for deciding
27 the next case, if materially identical, in the same way." Id.
28 But, the doctrine of stare decisis "is more complex than th[at]

1  summary definition[.]" <u>Colby</u>, 811 F.2d at 1123.  As Judge Posner
2  explained in <u>Colby</u>, "[t]he distinction essential to understanding
3  th[at] doctrine is between the persuasiveness and the authority of
4  a previous decision."  <u>Id.</u>  "Any decision may have persuasive
5  force[.]" <u>Id.</u> However, only if an "earlier decision is
6  authoritative, . . . which is to say, had weight independent of
7  its persuasive power[,]" may a court apply the doctrine of *stare*
8  *decisis* to conclude, with little or no analysis, that that earlier
9  decision mandates the same holding in a subsequent case.  <u>See</u> <u>id.</u>

10      A "variety of factors" come into play in determining whether
11 a given decision is authoritative so as to be given *stare decisis*
12 effect.  <u>Id.</u>  "[T]he most important [factor] is the relationship
13 between the court that decided it and the court to which it is
14 cited later as a precedent."  <u>Id.</u>  "The simplest relationship is
15 hierarchical: the decisions of a superior court in a unitary
16 system bind the inferior courts."  <u>Id.</u>  On the other hand, "[t]he
17 most complex relationship is between a court and its own previous
18 decisions."  <u>Id.</u>  In that situation:

19           A court *must give considerable weight*
           to those decisions *unless and until* they
20         have been overruled or undermined by the
           decisions of a higher court, or other
21         supervening developments, such as a
           statutory overruling.  But it is *not*
22         *absolutely bound* by them, and must
           give fair consideration to any substantial
23         argument that a litigant makes for
           overruling a previous decision.
24
25 <u>Id.</u> (emphasis added).  Thus, as the foregoing demonstrates, "the
   doctrine of stare decisis has different implications depending on
26 the relationship between the court rendering the judgment and the
27 court that is asked to give the prior judgment precedential
28

1  effect." however.   In re Deboer, 1999 WL 33486710, at *3 (Bankr.

2  D.Idaho 1999) (citation and footnote omitted).

3       In light of the foregoing, because the Magistrate Judge does

4  not preside over a "coordinate" court, *i.e.* another Article III

5  federal district court, based upon principles of *stare decisis*,

6  Gagan would have been binding, not merely persuasive authority,

7  upon that "inferior" court.   See id. (citation and footnote

8  omitted).   Under those circumstances, the Magistrate Judge

9  properly recommended denying the Friedmans' motion to quash based

10 upon Gagan.

11      The situation changes and becomes more nuanced at this

12 juncture though where, as part of its *de novo* review, this court

13 must decide how much weight to afford Gagan.   That order has not

14 "been overruled or undermined by the decisions of a higher court,

15 or other supervening developments, such as a statutory

16 overruling."   See Colby, 811 F.2d at 1123.   Therefore, this court

17 "must[,]" as Fidelity states, "give considerable weight" to Gagan.

18 See id.; see also Deboer, 1999 WL 33486710, at *3 ("When the prior

19 court is the same as the subsequent court, the general rule is

20 that precedent is not binding, even though a court may give great

21 weight to its own prior decisions.")  By the same token though,

22 the court is fully aware that "the principle of stare decisis does

23 not *bind* [it] to inexorably follow" Gagan.   See Deboer, 1999 WL

24 33486710, at *3 (emphasis added).

25      Nonetheless, based upon the compelling policy reasons which

26 "underlie the principle that courts should not lightly overrule

27 past decisions[]" even when *stare decisis* principles are not

28 implicated, the court will follow Gagan in the present case. See

Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403, 90 S.Ct.
1772, 26 L.Ed.2d 339 (1970)).  Among those policy reasons are:

> the desirability that the law furnish a
> clear guide for the conduct of individuals,
> to enable them to plan their affairs with
> assurance against untoward surprise; the
> importance of furthering fair and
> expeditious adjudication by eliminating
> the need to relitigate every relevant
> proposition in every case; and the necessity
> of maintaining public faith in the judiciary
> as a source of impersonal and reasoned judgments.

Id.  Applying the rule enunciated in Gagan that renewal of a
judgment under A.R.S. § 12-1611 may be accomplished by collection
activities, in short, conforms to the "wise judicial policy [of]
adher[ing] to rules announced in earlier cases."  Hubbard v.
United States, 514 U.S. 695, 711, 115 S.Ct. 1754, 131 L.Ed.2d 779
(1995)).

    As Justice Cardozo so eloquently put it: "'The labor of
judges would be increased almost to the breaking point if every
past decision could  be reopened in every case, and one could not
lay one's own course of bricks on the secure foundation of the
courses laid by others who had gone before him.'" Id. (quoting B.
Cardozo, The Nature of the Judicial Process 149 (1921)).  To be
sure, "the law is dynamic not static, but prior pronouncements are
not, and should not be, lightly discarded."  Deboer, 1999 WL
33486710, at *3.  Accordingly, the court concludes that even
though it is not absolutely bound to follow Gagan here, doing so
will "promote consistency and predictability, and faith in the
rule of law[.]" See id.  Not only that, while the court does not
find the Friedman's argument that renewal under A.R.S. § 12-1611
requires the filing of a separate civil action to be

1  "substantial," as its earlier discussion shows, the court has

2  "give[n] fair consideration" to that argument. See Colby, 811 F.2d

3  at 1123.

4      Before addressing the Friedman's second disagreement with the

5  Magistrate Judge's recommendation, the court adds that the fact

6  that Gagan is unpublished, as the Friedmans emphasize, does not

7  diminish its precedential value in this particular context.  It is

8  true that unpublished decisions are "not precedential in the

9  binding sense," but those decisions do "have a certain amount of

10 persuasive value[.]" See Negrete v. Secretary of U.S. Dep't of

11 Homeland Security, 2008 WL 314572, at *4 n.3 (E.D.Cal.), adopted

12 in full, 2008 WL 480018 (E.D.Cal. 2008); cf. Tumulty v. Fedex

13 Ground Package System, 2007 WL 896035, at *3 (W.D.Wash.

14 2007)("[T]he Ninth Circuit has 'condoned the use of unpublished

15 district court decisions to identify general policy considerations

16 relevant to cases bearing a factual similarity to one another.'")

17 (quoting Committee of Central American Refugees v. INS, 795 F.2d

18 1434, 1438 n.5 (9th Cir. 1986); and citing Onque v. Cox Commc'ns

19 Las Vegas, Inc., 2006 WL 2707466 at *3 (D.Nev. Sept. 19200)

20 (finding that the Court's ruling on an issue in this case was

21 persuasive, even though it was not controlling)).  That

22 precedential value is increased where, as here, there is a

23 complete absence of controlling authority directly on point.

24      Finally, despite the Friedmans' assertion to the contrary,

25 the Magistrate Judge did not "ignore" their "policy argument . . .

26 that the factual inquiry required to determine if, and when, a

27 judgment is renewed by activity creates an unnecessary and

28 unintended burden on the Arizona courts."  Obj. (doc. 188) at 3:4-

1  6.   Rather, the Magistrate Judge disagreed with that argument,
2  indicating that "no policy argument compels" the Friedmans'
3  construction of section 12-1611.  R&R (doc. 187) at 3:15.
4  Disagreeing with an argument is fundamentally different than
5  ignoring it all together.

6       What is more, consistent with the <u>Gagan</u> rationale, the
7  Magistrate Judge soundly reasoned that the notice policy
8  underlying section 12-1611 was met here in that the Friedmans were
9  "well informed about the status of the collection efforts."  <u>See</u>
10 <u>id.</u> at 3:21.  The court does not share the Friedmans' rather
11 alarmist view that denying their motion to quash will "essentially
12 abrogate the Arizona judgment renewal statute."  <u>See</u> Obj. (doc.
13 188) at 3:20-21.  In short, nothing in the Friedmans' objections
14 convinces the court to deviate from its view, first expressed in
15 <u>Gagan</u>, that a judgment can be renewed under A.R.S. § 12-1611
16 through collection activities taken on that judgment.

17          ***2.   2006 California Action***

18      The Friedmans also dispute the Magistrate Judge's alternative
19 ground for finding compliance with section 12-1611, which is that
20 Fidelity's "2006 California action constitutes an action renewing
21 the judgment[]" for purposes of section 12-1611.  <u>See</u> R&R (doc.
22 187) at 3:22-23.  The Friedmans assert that that 2006 action was
23 not "an action 'on the judgment[;]'" thus it cannot serve to renew
24 the judgment.  Obj. (doc. 188) at 4:5.  With no support, the
25 Friedmans further contend that "[a] renewal action . . . renews
26 the uncollected damages from the original judgment."  <u>Id.</u> at 4:6-
27 7.  The 2006 California action was not such an action, however,
28 according to the Friedmans, because it is "an entirely new and

1  separate action that seeks damages different from those in the

2  Arizona Judgment (and its progenitor, the California Judgment)."

3  <u>Id.</u> at 4:8-9.

4      Fidelity's response is two-fold.  First, it asserts that

5  because the California action "is predicated on the existence of

6  the judgment and the absence of satisfaction[,]" the Magistrate

7  Judge "correctly found that [that] new lawsuit is a renewal action

8  on the judgment."[5]  Resp. (doc. 189) at 5:5-6; and 5:9-10.  Second,

9  Fidelity accurately notes the Friedmans' lack of support for what

10 it describes as their "narrow, technical view" of "a renewal

11 action[.]"  <u>See</u> <u>id.</u> at 5:6-7 (citation omitted).

12     Insofar as Fidelity's first response is concerned, the

13 Friedmans reply that the complaint in the 2006 California action

14 "does not even mention the Arizona Judgment[.]"  Reply (doc. 190)

15 at 4:23-24.  Therefore, the Friedmans claim that Fidelity's first

16 response is nothing more than "an after-the-fact invention that

17 seeks to avoid the consequences of its failure to properly renew

18 the Arizona Judgment by affidavit."  <u>Id.</u> at 4:22-23; and 4:25-26.

19     The complaint in the California action does not explicitly

20 mention that the certification of the 2002 California judgment was

21 filed in this court on November 14, 2002.  But, as the Magistrate

22 Judge pointed out, that complaint does specifically allege the

23 existence of the California judgment.  <u>See</u> R&R (doc. 187) at 4:1-8

24

25     [5]    This is not an entirely accurate statement of the Magistrate Judge's
   finding.  What the Magistrate Judge actually found, as noted above, is that the
26 California action was "an action renewing the judgment," not that it was a "renewal
   action."  R&R (doc. 187) at 3:22;23; and at  4:17.  At first glance this may seem
27 like splitting hairs, but it is an important distinction given the Friedman's
   position that section 12-1611 requires a "renewal action," which they define as
28 "renew[ing] the uncollected damages from the original judgment."  Obj. (doc. 188)
   at 4:6-7.

1   (citing Co. at 4).  Moreover, even a cursory review of that
2   complaint demonstrates, as the Magistrate Judge found, that
3   "[t]here can be little doubt that the 2006 action is based on an
4   effort to collect on the 2002 judgment."  <u>Id.</u> at 4:10-11.  Indeed,
5   as the Magistrate  Judge observed, this court has previously
6   recognized as much when it noted that Fidelity had filed the 2006
7   California action "'<u>in connection with their [the judgment</u>
8   <u>debtors] evasion of the underlying judgment</u>.'"  <u>Id.</u> at 4:15-16
9   (citation omitted) (emphasis added by Magistrate Judge).  For
10  these reasons, the court gives no credence to the Friedmans'
11  assertion that because the complaint in that 2006 California
12  action "does not even mention the Arizona Judgment[,]" that
13  complaint cannot be the basis for a finding that Fidelity renewed
14  the judgment under section 12-1611.  <u>See</u> Reply (doc. 190) at 4:23-
15  24.

16      Additionally, in this court's opinion, the Friedmans are
17  improperly focusing upon the necessity of "a *cause of action* on
18  the judgment" to effect a renewal under section 12-1611.  <u>See</u> Obj.
19  (doc. 188) at 4:24-25 (emphasis added).  As previously discussed,
20  all that  that statute requires is "*action* thereon at any time
21  within five years after the date of the judgment."  A.R.S. § 12-
22  1611 (West 2003) (emphasis added).  As should be abundantly clear
23  by now, because the court declines to narrowly construe "action
24  thereon[,]" it agrees with the Magistrate Judge that the 2006
25  California action comes within the purview of that statute.  Based
26  upon this finding, there is no need for the court to become mired
27  down in the issue of what constitutes a "renewal action" and
28  whether the California action amounts to such an action.

- 18 -

1    To summarize, the Magistrate Judge correctly accepted
2 Fidelity's argument that it renewed the judgment under A.R.S. §
3 12-1611 (1) through its collection activities in this case; and
4 (2) by filing the 2006 California action.  Correspondingly, the
5 Magistrate Judge correctly  rejected the Friedmans' argument that
6 "action" within the meaning of section 12-1611 requires a
7 "separate civil action."

8 **III.  Absence of Recommendations**

9    As mentioned at the outset, Fidelity advanced three separate
10 arguments before the Magistrate Judge as to why its judgment has
11 not expired, and thus the Friedmans' motion to quash should be
12 denied.  As also mentioned at the outset, because the Magistrate
13 Judge found the first argument convincing, he expressly found "no
14 need to address [Fidelity's] last two arguments."  R&R (doc. 187)
15 at 2:22.  Even though the Magistrate Judge did not make any
16 recommendations as to those last two arguments, the Friedmans
17 "request" or "urge[]" that this  court, as part of its *de novo*
18 review, rule on Fidelity's alternate arguments now.  Obj. (doc.
19 188) at 6:22; and at 7:8; and Reply (doc. 190) at 5:14.  Not
20 ruling will "create needless judicial inefficiency and could
21 result in a worst-case scenario of two appeals on the issue of
22 whether the judgment was renewed[,]" the Friedmans contend.  Obj.
23 (doc. 188) at 6:20-21.  By the same token though, the Friedmans
24 readily concede "that the Court is not required to address" those
25 alternative arguments.  Reply (doc. 190) at 5:16-17.

26    The court does not find persuasive Friedman's doomsday
27 forecast of "judicial inefficiency" and speculation about a
28 "worst-case scenario" in the absence of a ruling on Fidelity's

1  alternative arguments.  Thus, the court declines the Friedmans'
2  "request" to have the court rule on those alternative arguments.
3  The court agrees with the Magistrate Judge that not only did
4  Fidelity renew its judgment under section 12-1611 by it collection
5  activities in this case and by filing the 2006 California action,
6  but it also agrees that given those findings there is "no need" to
7  address Fidelity's alternate arguments.  If, as the Friedmans
8  predict, an appeal is inevitable here, the Court of Appeals is
9  always free to "affirm on any ground supported by the record, even
10 if not relied upon by the district court[.]" <u>Rivero v. City & Co.</u>
11 <u>San Francisco</u>, 316 F.3d 857, 862 (9th Cir. 2002) (citation
12 omitted).  Consequently, this court, like the  Magistrate Judge,
13 declines to rule on Fidelity's alternative arguments.

14 ***IV.  Certification to Arizona Supreme Court***

15      During oral argument before the Magistrate Judge, for the
16 first time, the Friedmans requested certification to the Arizona
17 Supreme Court "the question of the meaning of the word 'action' in
18 A.R.S. § 12-1611."  R&R (doc. 187) at 5:4-5.  The Magistrate Judge
19 expressly denied that request, reasoning that because he had
20 "conclude[d] that the Motion to Quash may be denied on the
21 alternative ground that the California 2006 action constitutes an
22 action renewing the judgment, certification would not affect the
23 disposition of this matter[.]" <u>Id.</u> at 5:6-7.

24      Even in the face of that outright denial, the Friedmans
25 continue to pursue certification.  In their view, "[b]efore the
26 Court ventures into uncharted waters and changes Arizona law, it
27 should consult the Arizona Supreme Court for its interpretation of
28 the meaning of 'action' as that word is used in A.R.S. § 12-1611."

Obj. (doc. 188) at 7:15-16.  The Friedmans denounce the court for

"taking a 'facts of the case" approach[,]" which it predicates

will "have a deleterious effect on the judicial efficiency of the

Arizona courts, potentially bring[ing] to life numerous expired

judgments and essentially eliminat[ing] the need to follow the

statutory renewal procedure."  <u>Id.</u> at 7:17-19.  Then, broadening

the scope of the issues for which it seeks certification, the

Friedmans specifically are seeking to have "this Court ask two

other questions[:]" (1) "must a renewal *affidavit* be filed to

renew a judgment pursuant to A.R.S. § 12-1612[;]" and (2) "can a

judgment be renewed by action thereon by the filing of a second

action, in another state, that does not identify the Arizona

Judgment and includes causes of action that are other than an

action on the judgment and includes new defendants?"[6]  <u>Id.</u> at 8:4-

---

[6]     Actually, in their objections the Friedmans are seeking to have the
following *four* questions certified to the Arizona Supreme Court:

(1) Pursuant to A.R.S. § 12-1612, does an action to renew a judgment
in Arizona require the filing of a separate action (lawsuit)
or does collection activity undertake to satisfy the judgment suffice
as action on the judgment.

(2) Pursuant to A.R.S. § 12-1612, does a separate lawsuit filed in
another state serve to renew an Arizona judgment, when that foreign
action does not expressly plead the existence [of] or identify that
Arizona judgment or state a cause of action to renew the Arizona
judgment, and includes only causes of action and damages that are
new and distinct from the action giving rise to the Arizona judgment.

(3) Pursuant to A.R.S. § 12-1612, does the renewal of an Arizona
judgment by affidavit require an actual affidavit (or other
sworn-to assertion of facts) and, if so, must the affidavit (or
similar sworn-to document) provide all of the information set forth
in that statute.

(4) Pursuant to A.R.S. § 12-1612, does the renewal of an Arizona
judgment by affidavit permit the filing of the renewal affidavit prior
to the 90-day period before expiration as set forth in the statute and,
if an earlier filing [sic] permitted, how long before that 90-day period is
filing permitted for renewal to be effective.

Obj. (doc. 188) at 8:9-25; and 9:1-2.

7.

Fidelity raises both procedural and substantive challenges to certification.  Procedurally, because the Magistrate Judge has already denied the certification request, as opposed to merely recommending denial, Fidelity asserts "there is no basis for reconsideration of [this aspect] of his order[.]" Resp. (doc. 189) at 5:8.  If the court is inclined to "reconsider[]" this request, this must be done, according to Fidelity, "by noticed motion with full opportunity for" it to "respon[d][.]" Id. at 5:9-10.

Substantively, Fidelity contends that certification of the four questions identified by the Friedmans is "not appropriate" because certification will "not dispose of this matter."  Id. at 5:12-13.  That is so, Fidelity reasons because those four questions fail to take into account "the fourth ground [for] the validity of [its] judgment, i.e. Fidelity's April, 2007 certification of its judgment[.]" Id. at 5:18-19.

The Friedmans retort, in essence, that their certification request is not procedurally defective because they are not, as Fidelity puts it, requesting reconsideration.  Disregarding the lack of full briefing on the certification issue, the Friedmans add that such requests may be made "at any time."  Reply (doc. 190) at 6:5  Contradicting Fidelity, the Friedmans next respond that certification is determinative because it "will dispose of the issues of renewal by action and a renewal by affidavit[.]" Id. at 6:12.  As to Fidelity's reliance upon the April 2007 certification of judgment, the Friedmans suggest certifying that issue as well, i.e. "[w]hether Arizona law permits multiple domesticated judgments[.]" Id. at 6:16-17.

1    Taking into account further possible delays, and the

2 uncertainty of whether "the legal issue[s] can be framed to

3 produce a helpful response by the state," Complaint of McLinn, 744

4 F.2d 677, 681 (9th Cir. 1984) (citations omitted), in the exercise

5 of its discretion, the court declines to certify any of the five

6 questions which the Friedmans specify.  See Commonwealth Utilities

7 Corp. v. Goltens Trading & Engineering PTE Ltd., 331 F.3d 541, 548

8 (9th Cir. 2002) (internal quotation marks and citation omitted)

9 ("Use of certification rests in the sound discretion of this

10 court.") Accordingly, it agrees with the Magistrate Judge,

11 although for slightly different reasons, that certification is not

12 necessary here.

13    To summarize, after conducting its own independent de novo

14 review, the court finds no merit to any of the Friedmans'

15 objections to the Magistrate Judge's recommendation (doc. 187)

16 that this court DENY their "Motion to Quash, Vacate and/or Strike

17 Fidelity's Certification of Judgment for Registration in Another

18 District (dated January 1, 2007) and Renewal of Judgment in

19 District of Arizona" (doc. 171).  Accordingly, for the reasons set

20 forth herein,

21    IT IS ORDERED that the court hereby DENIES that the "Motion

22 to Quash, Vacate and/or Strike Fidelity's Certification of

23 Judgment for Registration in Another District (dated January 1,

24 2007) and Renewal of Judgment in District of Arizona" (doc. 171)

25 . . .

26

27

28

is DENIED in its entirety.

DATED this 1st day of August, 2008.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record