1   WO

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF ARIZONA

9

10

11

12  Fidelity National Financial,    )
    Inc., *et al.*,                 )
13                                  )
                     Plaintiffs,    )     No. CIV 03-1222 PHX RCB
14                                  )
            vs.                     )          O R D E R
15                                  )
    Colin H. Friedman,              )
16  individually and as trustee     )
    of the Friedman Family Trust    )
17  UDT, dated July 23, 1987;       )
    Hedy Kramer Friedman,           )
18  individually and as trustee     )
    of the Friedman Family Trust    )
19  UDT, dated July 23, 1987;       )
    Farid Meshkatai, an             )
20  individual; and Anita Kramer    )
    Meshkatai, individually and     )
21  as trustee of the Anita         )
    Kramer Living Trust, dated      )
22  July 23, 1987,                  )
                                    )
23                   Defendants.    )
    _____)
24

25                          ***Introduction***

26       Since 2002, plaintiffs, Fidelity National Financial, Inc. and

27  Fidelity Express Network, Inc. ("Fidelity"), have been attempting

28  to enforce a nearly $8.5 million dollar judgment, which was entered

1  in their favor and against defendants in the United States District

2  Court, Central District of California.  Over the past five years,

3  Fidelity has engaged in extensive collection activities in this

4  court and in California federal courts, familiarity with which is

5  assumed.  This latest dispute arises out of a February 7, 2007,

6  order of this court wherein it granted Fidelity's motion to compel

7  document production from Yariv Elazar, a non-party.  <u>Fidelity</u>

8  <u>National Financial, Inc. v. Friedman</u>, 2007 WL 446134 (D.Ariz. Feb.

9  7, 2007) ("discovery order").  The court also granted Fidelity's

10 motion for sanctions "directing [Mr.] Elazar to pay . . . sanctions

11 in the amount of $1,170.00 to [Fidelity] for attorney's fees

12 incurred in bringing th[at] motion to compel."  <u>Id.</u> at *5.

13     Currently pending before the court is Fidelity's "Motion for

14 an Order to Show Cause [("OSC")]" seeking to hold defendants Farid

15 Meshkatai and Anita Kramer Meshkatai[1] in civil contempt for

16 violating the discovery order directed to Mr. Elazar.  Mot. (doc.

17 191) at 3, ¶ 11.  Fidelity is also seeking to hold three non-

18 parties in contempt for supposedly violating that discovery order -

19 - "the Kramer Insurance Trust,[2]" and attorneys J. Daniel Campbell[3]

20 and Allen Hyman.  <u>Id.</u>  Lastly, there is a motion pending by

---

[1]     Unless necessary to distinguish between Mr. and Mrs. Meshkatai, they will be collectively referred to throughout as "the Meshkatais."

[2]     As just stated, Fidelity refers to this trust as "the Kramer Insurance Trust," but according to the Trustee for the "The Anna and Noach Kramer Irrevocable Insurance Trust," which is opposing this motion, there is no such entity as "the Kramer Insurance Trust."  <u>See</u> Spector Decl'n (doc. 204) at 10, ¶ 6. The court is proceeding on the assumption that Fidelity is referring to the former trust entity. In light of the foregoing, for purposes of this order only, "Trust" shall be read as meaning "The Anna and Noach Kramer Irrevocable Insurance Trust."

[3]     Mr. Campbell is the "former attorney[]" for the Meshkatais, "[i]ndividually and as trustee of the Anita Kramer Living Trust, and Non-Party Yariv Elazar[.]" Mot. (doc. 210) at 2:14-16.

1  Fidelity to strike the Meshkatais' response to Fidelity's reply.

2  Mot. (doc. 230).

3                            ***Background***

4  ***I.   Request for Judicial Notice***

5       With their response, the Meshkatais filed a Request for

6  Judicial Notice ("RJN") (doc. 218), which is seven inches high and

7  totals more than 1600 pages.  This RJN is burdensome, not only

8  because of its volume, but because parts of it are illegible.  For

9  example, some but not all of the documents (*i.e.*, copies of checks

10 and transcripts) have been reduced in size to the point where it is

11 almost impossible to read them without magnification.  Fidelity

12 objects to this RJN, contending that 11 of the 17 proffered

13 exhibits constitute inadmissible hearsay and are irrelevant.  Pl.

14 Obj. (doc. 226-4).

15      When properly employed, RJNs are useful litigation devices.

16 The manner in which the Meshkatais' RJN has been presented has the

17 opposite effect.  Thus, the court denies their RJN.[4]

18 ***II.  Prior Motion to Compel***

19      While conducting investigations as part of their post-judgment

20 collection efforts, in September 2006, Fidelity "apparently learned

21 that the judgment debtors who are Defendants in this action had

22 loaned a large sum of money to [Mr.] Elazar, a third party residing

23 in Scottsdale, Arizona."  <u>Fidelity</u>, 2007 WL 446134, at *1 (citation

24 omitted).  On October 10, 2006, Fidelity "served Elazar with a

25

26      [4]     If ultimately the court grants this motion for an OSC as to the
27 Meshkatais, and orders an evidentiary hearing as to why they should not be held in
   contempt, they will, of course, be free to seek to introduce any of those documents
   as exhibits.  The court will rule on the admissibility of the proffered exhibits
28 at that time.

subpoena issued by this Court for documents related to transactions with the judgment debtors." _Id._ (citations omitted).  One day prior to the date Elazar was to produce those documents, Allen Hyman, a California lawyer who indicated that he represented Elazar, sent a letter to Fidelity objecting to that subpoena.  _Id._ (citation omitted).  When Elazar did not comply with the subpoena, eventually, Fidelity filed a motion to compel.

On December 4, 2006, J. Daniel Campbell entered an "appearance on behalf of "Non-Party Yariv Elazar" and "on behalf of Defendants Farid Meshkatai and Anita Meshkatai, individually and as trustees of the Anita Kramer Living Trust."  Docs. 123 and 124.  Attorney Campbell did not appear on behalf of the Trust, however.  Mr. Campbell also filed a response to Fidelity's motion to compel, again only on behalf of the Meshkatais and Mr. Elazar – not on behalf of the Trust.  See Doc. 125.

### A.  _Discovery Order_

After making a threshold determination that it had jurisdiction over Elazar because attorney Campbell had appeared on his behalf, the court found no merit to any of the objections to the motion to compel.  See _Fidelity_, 2007 WL 446134, at *1 n.1.

Recognizing that "the purpose of post-judgment discovery under Rule 69(a) is to discover concealed or fraudulently transferred assets[,]" this court found that Fidelity "made a strong showing that the documents sought from Elazar are both relevant and necessary in light of [its] discovery of a substantial loan from the judgment debtor to Elazar."  _Id._ at *2 (citations omitted).  Discounting defendants' suggestion of an "improper motive" by Fidelity in the timing of the Elazar subpoena, the court stated

1    that it "perceive[d] nothing sinister about [Fidelity's] motives"

2    in that regard.  Id. at *3.  The court explained, "Defendants cast

3    greater doubt on their own motives through their silence on the

4    issue of the alleged loan transaction and their hollow assertions

5    that the documents sought from Elazar are irrelevant."  Id.

6    Finally, in granting Fidelity's motion to require Mr. Elazar to pay

7    Fidelity's attorney's fees, the court noted that the "underlying

8    objections to the subpoena served on Elazar border on frivolous."

9    Id. at *4.

10       **B.  *Alleged Failure to Produce***

11       According to Fidelity, some but not all of the subpoenaed

12   documents were produced.  Fidelity maintains that "[k]ey documents

13   were omitted from that production, including documents evidencing

14   the Meshkatais and [the] Trust's violations of an asset freeze" in

15   the California RICO action.  See Mot. (doc. 191) at 2, ¶ 8.  It

16   therefore, asserts that "[t]here is [u]ndisputed, [c]lear, and

17   [c]onvincing [e]vidence that *Elazar* [v]iolated the Court's

18   [o]rders."  Reply (doc. 226) at 2:21 (emphasis added).

19       Despite the foregoing, Fidelity has turned its attention away

20   from Elazar for the moment.  Fidelity is seeking to hold the

21   Meshkatais, the Trust and attorneys Campbell and Hyman in contempt,

22   but not Mr. Elazar.  As to the Meshkatais, Fidelity maintains that

23   "[w]ithout Elazar's knowledge, Farid Meshkatai produced the

24   documents and Anita Meshkatai paid the sanctions with money from

25   the Trust."  Id. at 2, ¶ 7.  The copy of the check in the record

26   purporting to be that payment is written on the account of Eliani,

27

28

1    LLC,[5] however, not on any trust account.  Kroll Decl'n (doc. 191-

2    2), exh. 38 thereto.

3         To show Elazar's supposed lack of knowledge as to the claimed

4    incomplete production of documents and payment of the sanctions by

5    Mrs. Meshkatai, Fidelity heavily relies upon Elazar's May 8, 2008,

6    deposition.  Apparently Elazar was not represented by counsel then.

7    Id. at 2, ¶ 9; see also Gulden Decl'n (doc. 216) at 19, ¶ 3; Kroll

8    Decl'n (doc. 191-2), exh. 12 thereto at 6:21-23.  The record is

9    replete with alleged irregularities surrounding that deposition.

10        Suffice it to say for now that during his deposition, Mr.

11   Elazar was specifically asked whether he knew attorneys Campbell or

12   Hyman.  When asked how he knew Mr. Hyman, Elazar testified that he

13   "never met" Hyman, but that Hyman "called" him and Hyman "asked

14   [him] a few questions."  Id., exh. 12 thereto at 10:24-25 - 11:1.

15   When asked "what questions" Hyman asked of him, Elazar replied:

16   "What is written on the subpoena and what kind of documents

17   [Elazar] [was] going to send them."  Id., exh. 12 thereto at 11:2-

18   4.  Mr. Elazar does not think he sent the documents to attorney

19   Hyman.  See id., exh. 12 thereto at 11:6-7.  In fact, later in his

20   deposition, Mr. Elazar stated that he "want[ed] to make clear[]"

21   that he did not give Mr. Hyman anything.  Id., exh. 12 thereto at

22   117:2-10.

23        As to attorney Campbell, Elazar testified that he did not know

24   him.  Id., exh. 12 thereto at 11:8-10.  Elazar further testified

25

26        [5]    The court is well aware of the seemingly close relationship between
     Eliani and the Trust.  As the Trustee explains, "Eliani is a joint venturer with
27   Elazar of three real estate projects."  Spector Decl'n (doc. 204) at 10, ¶ 8.
     "Eliani was a joint venture between . . . Elazar and Farid Meshkatai to renovate
28   houses in Arizona."  Id.  The Trustee further declares that "[t]he Trust provided
     capital to Elazar."  Id.

that he was unaware that Campbell and another attorney in his

office filed a response to Fidelity's motion to compel.  Id., exh.

12 thereto at 11:13-18.  Elazar continued, testifying that he was

not aware of this court's discovery order, or the sanctions award.

Id. at 12:2-5; and 9-11.  When asked if he was "aware that Eliani,

LLC paid the fine on [his] behalf[,]" Mr. Elazar responded, "No.  I

never know that I need to pay something."  Id. at 12:12-14.  When

asked whether he had "any problem with responding to [the subpoena]

and producing the documents[,]" Elazar replied, "No."  Id. at 13:5-

8.

     Fidelity is seeking five separate forms of relief for the

alleged civil contempt.  First, it is seeking to hold "contemnors .

. . joint[ly] and severally liable" for unspecified "costs incurred

to uncover [their] fraud[.]"  Mot. (doc. 191) at 17.  The other

three forms of relief which Fidelity is seeking pertain only to the

Meshkatais and the Trust.  It seeks a court order requiring them to

[p]roduce [d]ocuments [e]videncing [t]ransfers to Elazar and

Eliani's [a]ssets."  Id. at 17:22-23.  Fidelity further seeks that

the Meshkatais and the Trust be ordered to "[p]roduce an

[a]ccounting for Eliani." Id. at 18:10.  Fidelity next requests

that the court impose a two day notification on the Meshkatais and

the Trust prior to "making any payment on behalf of Eliani or the

joint venture with Elazar[.]" Id. at 18:23-24.  Finally, it

requests that the court order the Meshkatais and the Trust "to pay

to the RICO clerk of court [i.e., the clerk for the United States

District Court, Central District of California], the amount of the

lien they released in violation of the asset freeze and hid by

their violations of this Court's orders." Id. at 19:7-9.

1      ***C.  Meshkatais***

2        The Meshkatais oppose Fidelity's motion, which they assert is

3 based upon "unsupported allegations that [their] former attorney,

4 Allen Hyman . . . , did not produce documents given to him by

5 Elazar, and that Elazar was unaware that Hyman represented him in

6 connection with the" discovery order.  Resp. (doc. 216) at 1:17-20.

7 Characterizing Fidelity's motion as "an attempt to prejudice this

8 Court against [them] and vexatiously multiply proceedings in this

9 Court] and in the related California actions, the Meshkatais

10 contend that the court should "summarily" deny this motion.  Id. at

11 3:8-10.  Alternatively, the Meshkatais seek a hearing during which

12 they want to cross-examine Fidelity's attorney herein, Janice M.

13 Kroll, and "afford [Mr.] Elazar the opportunity to clarify his

14 deposition testimony."  Id. at 3:12-13 (footnote omitted).

15        Fidelity responds that it has shown by clear and convincing

16 evidence that the Meshkatais "aided" the violations of this court's

17 discovery order; they are "[l]egally '[i]dentified with Elazar[;]"

18 and they have acted in "bad faith."  Reply (doc. 226) at 5:2 and

19 12.  Therefore, the court should grant Fidelity's motion and find

20 the Meshkatais in contempt.

21      ***D.  Attorney Campbell***

22        Mr. Campbell's involvement with the present action appears to

23 have been fairly limited.  He represented the Meshkatais and

24 purportedly Mr. Elazar in connection with the motion to compel,

25 after being contacted by California attorney Hyman, who at the time

26 was purportedly representing Elazar.  Campbell Aff. (doc. 210-2) at

27

28

2-3.[6]  He filed and prepared a response to the motion to compel on their behalf.  Id. at 3, ¶ 11 (citation omitted).  After entry of the discovery order, Mr. Campbell avers that he "immediately contacted Mr. Hyman to determine the quickest way for the documents to be produced to [Fidelity's] counsel."  Id. at 3, ¶ 12.  They "decided to produce the documents through Mr. Hyman's office, as he had been more extensively involved in the litigation."  Id.   Also, given the proximity of Mr. Hyman's office to the office of Fidelity's counsel in California, "Mr. Hyman could get the documents to [Fidelity] faster than" could Campbell's office.  Id. According to Mr. Campbell, the documents were produced through Hyman's office on February 22, 2007.  Id. at 3, ¶ 13.

"At best," attorney Campbell describes Fidelity's motion as "a heavy-handed attempt to intimidate anyone who would stand in its way."  Id. at 3:4-5.  At worst, according to Campbell, this motion "may constitute a blatant misrepresentation to this Court."  Id. at 3:6-7 (footnote omitted).  Mr. Campbell strongly argues that he should not be held in contempt because the documents were produced and Fidelity did not "suffer[]" any "harm" in that its attorneys were compensated through the award of sanctions.  Id. at 5:19-20. Moreover, Campbell asserts that he "acted in good faith," and thus cannot be held in contempt.  Id. at 5.

Alternatively, as did the Meshkatais, Campbell requests an evidentiary hearing.  Id. at 9.  He also wants the "opportunity to conduct appropriate discovery[.]"  Id.  Believing the Elazar's

---

[6]     The court is aware of Fidelity's "Evidentiary Objections" to Campbell's declaration, and its request to strike included therein. Obj. (doc. 225-2) at 2:1. However, because Fidelity is not objecting to any of the paragraphs from Campbell's declaration upon which the court is relying herein, it denies this request as moot.

1  deposition "was extremely irregular in the manner in which it was
2  taken[,]" Campbell wants to be allowed to conduct a full
3  investigation into th[at] . . . deposition . . . and the motives of
4  Fidelity in its decision to attack counsel." _Id._ at 3 n.1.
5  Therefore, he requests that the court grant a scheduling conference
6  in that regard. _Id._ at 9-10.

7      Fidelity retorts that "clear and convincing evidence shows
8  that Campbell aided" violations of the discovery order. Reply
9  (doc. 225) at 8-9 (emphasis omitted). Moreover, from Fidelity's
10  standpoint, Campbell "failed to insure that Elazar took all
11  reasonable steps to comply with" the discovery order. _Id._ at 2:3.
12  Further, Fidelity asserts that Campbell "acted recklessly and with
13  an improper purpose[,]" and he "unreasonably multiplied
14  proceedings." _Id._ at 6:2; and at 7:9-10. In light of the
15  foregoing, Fidelity requests that the court issue an OSC regarding
16  civil contempt as to Mr. Campbell. _Id._ at 9:24-25.

17      ***E.  Attorney Hyman***

18      Attorney Hyman did not respond at all to this motion, despite
19  the fact the he was personally served. _See_ Doc. 192 at 2.
20  Fidelity urges this court to use Hyman's silence as a basis for
21  finding that: "Elazar did not retain Hyman; Elazar did not
22  authorize Hyman to oppose the subpoena; Elazar did not authorize
23  Campbell to appear on his behalf; Elazar did not authorize Campbell
24  to oppose the subpoena and the motion to compel; Hyman did not
25  notify Elazar of the [discovery] order, and Elazar did not produce
26  documents to Hyman." Reply (doc. 225) at 6-7. More reasonably,
27  given Hyman's failure to respond, Fidelity believes that the court
28  should issue an OSC as to him.

1    **_F.   Trust_**

2        Fidelity contends that the Trust, another non-party,

3    should be held in contempt because it, along with the Meshkatais,

4    purportedly "concealed Fidelity's judgment from Elazar in order to

5    use Elazar to implement fraudulent transfers and shelter assets

6    from Fidelity."  Mot. (doc. 191) at 1:10-11.  Fidelity further

7    claims that "the Meshkatais and the Trust simply pretended to this

8    Court that <u>they were Elazar</u> – without Elazar's knowledge, their

9    attorneys appeared for Elazar, objected to the subpoena, and

10   produced only select documents to Fidelity."  <u>Id.</u> at 1:12-14

11   (emphasis in original).

12       The Trust first objects to Fidelity's motion for an OSC based

13   upon lack of personal jurisdiction.  Second, the Trust objects,

14   arguing that any contempt proceeding as to it should be brought in

15   the Central District of California because if any court order was

16   violated by Mrs. Meshkatai writing the sanctions check, it was an

17   order issued by that court in the RICO action.

18       Fidelity responds by seeking to have the court strike the

19   Trust's response as untimely.  If the court denies that request,

20   Fidelity further responds that the court does have personal

21   jurisdiction over the Trust for several reasons, which are set

22   forth below in a brief discussion of that issue.  On the merits,

23   Fidelity argues that the Trust is "legally identified with Eliani

24   and" the Meshkatais, and it participated in the alleged "fraud" by

25   supposedly paying "Campbell to represent Elazar[,]" and to "pay the

26   Court-ordered sanctions."  Reply (doc. 222) at 7:11-13 (citations

27   omitted).  Therefore, Fidelity maintains that the court should

28   issue an OSC as to why the Trust should not be held in civil

1  contempt.

2                               ***Discussion***

3  ***I.  Motion to Strike***

4       "[T]he Local Rules make no provision for a 'reply to a

5  reply.'"  Spain v. EMC Mortg. Co., 2009 WL 464983, at *2 (D.Ariz.

6  Feb. 24, 2009).  Those Rules "are explicit in allowing a

7  'Memorandum by Moving Party[;]' a 'Responsive Memorandum[;]' and a

8  'Reply Memorandum' - nothing more."  Id. (citing LRCiv 7.2).

9  Therefore, as LRCiv 7,.2(m)(1) allows, the court grants Fidelity's

10  motion to strike the Meshkatai's "Response to Plaintiffs' Reply,"

11  which is docket #228.  That "response," despite its title is, in

12  effect, a prohibited "reply to a reply," which the court will not

13  consider.

14  ***II.  Motion for Order to Show Cause***

15       Before addressing the merits of Fidelity's motion, the court

16  will briefly consider the Trust's lack of personal jurisdiction

17  argument.

18       ***A.  Personal Jurisdiction***

19           ***1.  Strike***

20       Preliminarily, the court must consider Fidelity's contention

21  that the court should "strike" the Trust's response.  Reply (doc.

22  222) at 2.  Invoking LRCiv 7.2(I), Fidelity seeks to have the court

23  "strike" the Trust's response as untimely because it was filed two

24  weeks late.  Id.  Pursuant to that subsection, a court "*may . . .*

25  *deem[]*" failure to fully comply with LRCiv 7.2 "consent to the

26  denial or granting of the motion and the court may dispose of the

27  motion summarily."  LRCiv 7.2(I) (emphasis added).  That Rule makes

28  no express provision for striking untimely responses, however.

Because motions to strike are generally disfavored, <u>see</u> LRCiv

7.2(m)(1), the court will not strike the Trust's response.

Similarly, in the exercise of its discretion, the court will not

deem the Trust's untimely response as consent to granting Fidelity's

contempt motion.

### *2. Merits*

After stressing that it is not a party to this action, the

Trust asserts that this court should not exercise personal

jurisdiction over it because it has never: (1) "appeared before this

Court; (2) consented to jurisdiction of this Court; or (3) waived

its right to raise lack of personal jurisdiction." Resp. (doc. 204)

at 3:5-6.  The Trust further states that it "has no ties to the

State of Arizona." <u>Id.</u> at 3:8-9.  The Trust also claims that it is

not domiciled here, and does not do business here. <u>See id.</u> at 3:9.

Fidelity counters that the court does have personal

jurisdiction over the Trust because it (1) "has waived any

objections[;]" (2) "was properly served[;]" (3) "consented to

jurisdiction in Arizona[;]" (4) "has regular and continuous contacts

in Arizona, does business in Arizona, owns real estate in

Arizona[;]" and (5) "the contemptuous conduct which is the subject

of this Motion arises out of the Trust's business and real estate

holdings in Arizona."  Reply (doc. 222) at 2-3; and 5:3.

Preliminarily, the court stresses that the Trust's non-party

status does not preclude a finding of contempt against it. <u>See</u>,

<u>e.g.</u>, <u>Peterson v. Highland Music, Inc.</u>, 140 F.3d 1313, 1323 (99th

Cir. 1998) (internal quotation marks and citations omitted) (non-

party respondent may be held in contempt either if he "abet[s] the

defendant [in violating the court's order] or [is] legally

1  identified with [the defendant, . . . and . . . the non-party ha[d]
2  notice of the order[]"). In any event, at this juncture, the court
3  finds the Trust's personal jurisdiction arguments "premature"
4  because it deems the process here to be the OSC, which the court has
5  not yet issued. See In re Resource Technology Corp., 2008 WL
6  5411771, at *3 (N.D.Ill. Dec. 23, 2008). Accordingly, the court
7  will leave for another day the Trust's contention that this court
8  lacks personal jurisdiction.

9          **B.  Scope of Alleged Contempt**

10         Fidelity's motion can easily be read, as did the Meshkatais, as
11  seeking contempt sanctions for violating orders other than the
12  discovery order issued by this court. Fidelity makes clear in its
13  reply, however, that it is limiting the scope of its contempt motion
14  to alleged violations of this court's discovery order. Reply (doc.
15  226) at 2. Given this clarification, the court will confine its
16  inquiry to whether an OSC should issue for alleged violations of the
17  February 7, 2007 discovery order.

18         **C.  Governing Legal Standards**

19         "[C]ourts have inherent power to enforce compliance with their
20  lawful orders through civil contempt." Spallone v. United States,
21  493 U.S. 265, 276 (1990). In a civil contempt proceeding"[t]he
22  moving party has the burden of showing by clear and convincing
23  evidence that the contemnors violated a specific and definite order
24  of the court." Federal Trade v. Enforma Natural Products, 362 F.3d
25  1204, 1211 (9th Cir. 2004) (internal quotation marks and citations
26  omitted). A "mere[] . . . preponderance of the evidence[]" will not
27  suffice. In re Dual-Deck Video Cassette Recorder Antitrust Litig.,
28  10 F.3d 693, 695 (9th Cir. 1993). Generally, a violation is shown

1  by the party's "failure to take all reasonable steps within the
2  party's power to comply." Reno Air Racing Ass'n., Inc. v. McCord,
3  452 F.3d 1126, 1130 (9th Cir. 2006) (internal quotation marks,
4  citation and footnote omitted).  Willfulness is not an element of
5  contempt.  See id.  Once the moving party meets its burden, the
6  burden "shifts to the contemnors to demonstrate why they were unable
7  to comply." Enforma Natural Products, 362 F.3d at 1211 (internal
8  quotation marks and citations omitted).

9       "[C]ivil contempt sanctions, or those penalties designed to
10 compel future compliance with a court order, are considered to be
11 coercive and voidable through obedience, and thus may be imposed in
12 an ordinary civil proceeding upon notice and an opportunity to be
13 heard." Int'l Union v. Bagwell, 512 U.S. 821, 827 (1994).  "Neither
14 a jury trial nor proof beyond a reasonable doubt is required." Id.
15 Thus, the Ninth Circuit "has repeatedly held, . . . , that finding a
16 party in civil contempt without a full blown evidentiary hearing
17 does not deny due process of law to a contemnor." United States v.
18 Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (citations omitted).  Of
19 particular significance here, however, is the Ninth Circuit's
20 explicit recognition that "a district court ordinarily should not
21 impose contempt sanctions solely on the basis of affidavits[,]"
22 unless those affidavits are uncontroverted. Id. (internal quotation
23 marks and citations omitted).

24      ***D.  Hearing***

25      In the present case, as earlier noted, if the court does not
26 summarily deny this motion, in the alternative, the Meshkatais and
27 Mr. Campbell request an evidentiary hearing.  Fidelity did not
28 respond to these requests.  Instead, Fidelity adheres to the view

- 15 -

1  that it has shown by clear and convincing evidence that the
2  Meshkatais, the Trust and attorneys Campbell and Hyman should be
3  held in civil contempt for violating this court's discovery order.
4      The court extensively reviewed these submissions, but even a
5  quick perusal highlights the necessity of a full-blown evidentiary
6  hearing.  The sheer volume of the submissions and the widely varying
7  interpretations which Fidelity and each of the respondents cast upon
8  them, especially the Elazar deposition, belies Fidelity's assertion
9  that it has met its burden of proof on this record.  The filed
10 submissions are at times contradictory and rife with credibility
11 issues.  Given that state of the record, it is impossible and, in
12 fact, it would be impermissible to resolve the issue of civil
13 contempt based solely upon the competing affidavits, declarations
14 and other filed documents.  An evidentiary hearing will allow for a
15 fully developed factual record, including credibility assessments.
16 A hearing will serve the additional critical purpose of insuring
17 that Fidelity and the respondents meet their respective burdens of
18 proof.
19      Any discussion of contempt remedies is obviously premature.
20 The court emphasizes, as earlier alluded to though, that Fidelity is
21 overreaching in terms of the scope of the remedies which it purports
22 to seek.  To the extent Fidelity is seeking to have this court enter
23 any orders with respect to the related California actions, the court
24 declines to do so, and will not entertain any further requests in
25 that regard.  See, e.g., Barrett v. Avco Financial Services
26 Management Co., 292 B.R. 1, 8 (D.Mass. 2003) (citing, inter alia,
27 Baker v. Gen. Motors Corp., 522 U.S. 222, 236, 118 S.Ct. 657, 139
28 L.Ed.2d 580 (1998)) ("[I]t is a well-established principle that only

the court that issued an order or injunction has subject matter jurisdiction to hold in contempt a violator of that order or injunction.")

### *Conclusion*

For the reasons set forth herein, IT IS ORDERED that:

(1) "Fidelity's Motion to Strike Farid and Anita Meshkatai's Response to Plaintiff's Reply in Support of Motion for an Order to Show Cause re: Civil Contempt for Violation of the Court's Orders to Yariv Elazar[] as not Authorized by Statute, Rule, or Court Order" (doc. 230) is GRANTED;

(2) Fidelity's "Motion for an Order to Show Cause re: Civil Contempt against Farid Meshkatai, Anita Meshkatai, the Kramer Insurance Trust, Daniel Campbell, and Allen Hyman for Violations of the Court's Orders to Yariv Elazar" (doc. 191) is GRANTED; and

IT IS FURTHER ORDERED that Farid Meshkatai, Anita Meshkatai, the Anna and Noach Kramer Irrevocable Insurance Trust, Daniel J. Campbell, and Allen Hyman shall appear, in person or by telephone, for a scheduling conference to be held on April 20, 2009 at 10:30 a.m. At that time, among other things, the court will establish a date for a hearing on this Motion and Order to Show Cause.

DATED this 30th day of March, 2009.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to all counsel of record; Daniel Campbell, III; Allen Hyman; and Denise M. O'Rourke

- 17 -