**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fidelity National Financial, Inc., a Delaware corporation, Fidelity Express Network, Inc., a California corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) No. CIV 03-1222-PHX-RCB |
| vs. | ) O R D E R ) |
| Colin H. Friedman, *et al.* | ) ) |
| Defendants. | ) ) |

## *Introduction*

This is the latest permutation of a nearly decade long battle by plaintiffs Fidelity National Financial, Inc. and Fidelity Express Network, Inc. ("Fidelity") to enforce a roughly $8.5 million dollar judgment, plus interest. Fidelity obtained that judgment against defendants Colin H. Friedman and Hedy Kramer Friedman ("the Friedmans"), among others,[1] following a trial in the

---

[1] That judgment was actually rendered against "Colin H. Friedman, individually and as trustee of the Friedman Family Trust UDT, . . . , Hedy Kramer Friedman, individually and as trustee of the Friedman Family Trust UDT, . . . , Farid Meshkatai, and Anita Kramer Meshkatai, individually and as trustee of the

the United States District Court for the Central District of California ("the California federal court"). Fidelity's judgment was entered in that court on July 12, 2002 ("the California judgment"). Fidelity then registered that California judgment in this Arizona district court by filing, among other things, a certified copy of that judgment on November 14, 2002 ("the Arizona judgment"). Essentially, the Friedmans[2] are once again seeking to have this court quash enforcement of that Arizona judgment because in their view it has expired and Fidelity never properly or timely renewed it.[3]

Fidelity vigorously disputes that the Arizona judgment has expired. That judgment has not expired, Fidelity counters, because on April 5, 2007, it filed in this court what it deems to be "both a second registration" of that judgment under federal law "*and . . . a renewal*" of the Arizona judgment under Arizona law. Pls.' Resp. (Doc. 329) at 6:19-20[4] (emphasis added). Then, viewing that April 5th document strictly as a "renewal affidavit," Fidelity further asserts that any "defect[s]" therein were "de minimis" and

---

Anita Kramer Living Trust . . . , and each of them, jointly and severally[.]" <u>Fid. Nat'l Fin. Inc. v. Friedman</u>, No. 00-cv-06902-GAF-RZ (C.D.Cal. 2002) (Doc. 235).

    [2]    As previously noted, defendants Farid and Anita Meshkatai are also subject to the 2002 California judgment and they are being represented by the same counsel as the Friedmans. Although disavowing that they are "moving parties" herein, the Meshkatais "join in th[e] [Friedmans'] Request as similarly situated judgment debtors who will be equally affected by the Court's ruling on the enforceability of Fidelity's judgment against Defendants in Arizona[.]" Defs.' Mot. (Doc. 327) at 2:11-14. In light of the foregoing, the Meshkatais shall be bound by this order as if they, too, had moved for the relief which the Friedmans are seeking.

    [3]    In seeking this relief, the Friedmans filed what they style as "Request for Ruling Consistent with Ninth Circuit Mandate[.]" (Doc. 327). The court deems that "Request" to be a motion and, obviously, Fidelity did as well given its timely filed response thereto.

    [4]    For ease of reference, all citations to page numbers are to the page numbers assigned by the court's case management and electronic case filing (CM/ECF) system.

were "cured" by the filing of "an additional affidavit . . . in 2008." Id. at 6:24-25. Fidelity thus contends that there is no basis for quashing its Arizona judgment, which by Fidelity's most recent estimation totals $10,685,204.[5] See id. at 8:9 (citation omitted).

### Background

### I. Procedural

The court assumes familiarity with the prolonged and rather tortuous history of this litigation. This most recent dispute begins with this court's order denying the Friedmans' motion to quash enforcement of Fidelity's Arizona judgment. This court found two grounds for denial. Both derive from A.R.S. §§ 12-1611, which provides that "[a] judgment may be renewed by action thereon at any time within five years after the date of the judgment." A.R.S. § 12-1611. First, this court found that Fidelity's "collection activities in this case" were tantamount to an "action thereon" within the meaning of section 12-1611. Fidelity Nat'l Fin., Inc. v. Friedman, 2008 WL 3049988, at *10 (D.Ariz. Aug. 8, 2008) ("Fidelity I"). Hence, Fidelity "renew[ed] its [Arizona registered] judgment under" that statute. Id. Second, this court held that Fidelity's federal Racketeer Influenced and Corrupt Organizations Act ("RICO") action also constituted an "action thereon" for purposes of renewing its Arizona judgment in accordance with A.R.S. § 12-1611. The court thus concluded that because Fidelity had properly renewed the Arizona judgment by those

---

[5]     Given the court's intimate familiarity with this action and because the issues have been fully briefed, in its discretion the court denies Fidelity's request for oral argument as it would not aid the decisional process. See Fed.R.Civ.P. 78; Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998); Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp., 933 F.2d 724, 729 (9th Cir. 1991).

- 3 -

activities, there was no basis for quashing it.

Disagreeing, the Friedmans appealed and the Ninth Circuit Court of Appeals certified two questions to the Arizona Supreme Court:

> (1) Do collection activities (such as filing for a writ of garnishment or applying for orders from the court to inspect a safety deposit box or require a debtor's exam) taken within Arizona, renew a judgment previously registered in Arizona?

> (2) Does the filing of a related lawsuit in a state other than Arizona renew a judgment previously registered in Arizona?

<u>Fidelity Nat'l Fin. Inc. v. Friedman</u>, 602 F.3d 1121 (9th Cir. 2010). The Arizona Supreme Court answered both questions in the negative. To renew a judgment pursuant to A.R.S. §§ 12-1551(B) or 12-1611, the Supreme Court explained, a party must bring a "specific form of suit – the common law action *on a* judgment[,]" . . . not simply an action in some way related to the earlier judgment[.]" <u>Fidelity Nat'l Fin. Inc. v. Friedman</u>, 225 Ariz. 307, ___, 238 P.3d 118, 121 (2010) ("<u>Fidelity III</u>"). Fidelity's Arizona collection efforts were not "a common law action on the 2002 judgment[,]" the Supreme Court reasoned, because those "efforts were attempts to collect upon the 2002 judgment, not to renew it." <u>Id.</u> at 123 (citation omitted). Additionally, that Court held that Fidelity's RICO lawsuit "was not a common law action on the judgment[] [in that] it did not simply recite the amount owed and seek a judgment on that debt." <u>Id.</u> Instead, that RICO "suit sought remedies under federal and California law because of actions allegedly undertaken by the [Friedmans] to frustrate collection of the 2002 judgment." <u>Id.</u>

Adopting the answers of the Arizona Supreme Court, the Ninth

- 4 -

Circuit held that because "Fidelity did not file a common law action for renewal on the 2002 judgment within five years of its entry, the judgment expired by 2008." *Fidelity Nat'l Fin. Inc. v. Friedman*, 402 Fed.Appx. 194, 196 (9th Cir. 2010) ("*Fidelity IV*") (citation omitted). In *Fidelity IV* the Court noted that Fidelity "also question[ed][,]" as it does now, "(1) whether it successfully renewed the judgment by affidavit in 2008, and (2) whether its 2007 registration of the final California judgment also renewed the judgment." *Id.* at 196. The Ninth Circuit did not address those issues though because this court did not in *Fidelity I*. The Ninth Circuit also declined to address those two issues because "the parties did not provide comprehensive briefing to inform [the Ninth Circuit's] review[.]" *Id.* (citations omitted). Pursuant to the Ninth Circuit's "formal mandate[,]" its judgment took effect November 22, 2010. *See* Defs.' Request For Judicial Notice ("RJN"), exh. B thereto (Doc. 328-2) at 2.

## II. *Factual*

The federal judgment registration statute provides in relevant part:

> A judgment in an action for the recovery of money
> . . . entered in any . . . , district court, . . .
> may be registered by filing a certified copy of the
> judgment in any other district . . . , when the
> judgment has become final by appeal or expiration
> of the time for appeal or when ordered by the court
> that entered the judgment for good cause shown.

28 U.S.C. § 1963. Presumably in accordance with that statute,[6] on November 14, 2002, Fidelity registered its California judgment by filing, *inter alia*, a certified copy of its judgment rendered in the California federal court. Doc. 1. That copy of the judgment

---

[6] That 2002 Certification does not mention 28 U.S.C. § 1963 on its face.

is attached to a document entitled "Certification of Judgment for Registration in Another District[.]" Id. (emphasis omitted).  That 2002 Certification states:

> An appeal was taken from this judgment and is currently pending before the U.S. Court of Appeals for the 9th Circuit.  The U.S. District Court for the Central District of California, . . . has entered an order allowing plaintiff to register its Judgment in Arizona.  Certified copies of the Judgment (filed July 10, 2002), and the Order Allowing Plaintiff to Register Its Judgment in Arizona (filed October 22, 2002) are attached.

Id.

After registering its California judgment here in 2002, in the following years Fidelity engaged in numerous, mostly unsuccessful, collection efforts in this district.  Eventually, on April 5, 2007, Fidelity filed in this court a document entitled "Certification of Judgment for Registration in Another District (dated January 1,[7] 2007) *and* Renewal of Judgment in District of Arizona[.]"  Defs.' RJN, exh. I thereto (Doc. 328-9) at 2 (bold emphasis omitted, italicized emphasis and footnote added).  This dual designation reflects Fidelity's uncertainty as to the exact nature of this document.  For brevity's sake, the court will refer to this document as the "2007 Certification," but no legal significance shall be accorded to that designation.

Attached to that 2007 Certification is another "Certification of Judgment for Registration in Another District[,]" again emanating from the California federal court.  That California Certification indicates that the Ninth Circuit "appeal was

---

[7] The attached certification emanating from the federal court in California actually is dated January 31, 2007 ("the California Certification"), not January 1, 2007, as Fidelity's Certification inaccurately states. Defs.' RJN, exh. I thereto (Doc. 328-9) at 3.

1 dismissed by order entered on May 15, 2003." Id., exh. I thereto
2 (Doc. 328-9) at 3.

3     Besides filing those two Certifications, on February 7, 2008,
4 Fidelity filed a document it designated as an "Additional Renewal
5 Affidavit Renewing the Judgment Registered in Arizona on November
6 15,[8] 2002" ("additional renewal affidavit"). Id., exh. H thereto
7 (Doc. 382-8) at 2 (emphasis omitted) (footnote added). Fidelity
8 filed that affidavit in response to the Friedmans' original motion
9 to quash the Arizona judgment.

10 ***Summary of Arguments***

11     The Friedmans argue that the court should quash the 2002
12 Arizona judgment because it has expired and Fidelity did not
13 properly or timely renew it. The Friedmans first contend that the
14 2007 Certification did not renew the Arizona judgment because it
15 was not a "renewal affidavit" within the meaning of A.R.S. § 12-
16 1612(B). Assuming *arguendo* that the 2007 Certification "was
17 sufficient to operate as a renewal affidavit[,]" nonetheless, the
18 Friedmans contend that it was untimely. Thus, from the Friedmans'
19 standpoint, Fidelity cannot rely upon the 2007 Certification to
20 renew the expired Arizona judgment.

21     Next, the Friedmans argue that the 2008 additional renewal
22 affidavit did not operate to renew the Arizona judgment because it,
23 too, was untimely. Regardless of its timeliness, the Friedmans
24 contend that that affidavit was "filed to correct the deficiencies
25 in the [2007] Certification[,]" and hence it constitutes "an

26

27         [8]     This date does not correspond to the docket sheet which indicates that
28 on November 14, 2002, the Certification of Judgment was received from the federal
court in California, and that it was "[e]ntered" on November 18, 2002. Pls.' RJN
(Doc. 330) at 10.

admission that the Certification did not meet the requirements of"
a renewal affidavit under "A.R.S. § 1612(B) and was, therefore,
invalid." Defs.' Mot. (Doc. 327) at 7:23-24.

From Fidelity's perspective, its Arizona judgment is "valid
and enforceable" because its "California judgment was timely
registered in Arizona in 2007 as *both* a second registration *and* as
a renewal." Pls.' Resp. (Doc. 329) at 6:18-20 (emphasis added).
Fidelity does not explain why, as it maintains, "[t]he 2007 renewal
was timely[.]" Id. at 6:24. Instead, Fidelity offers the following
*non sequitur*: That renewal "was timely because any defect in the
renewal affidavit was de minimis and was cured by an additional
affidavit filed in 2008." Id. at 6:24-25.

### *Discussion*

### *I. Requests for Judicial Notice*

Before addressing the parties' respective arguments, the court
must consider their separate RJNs made pursuant to Fed. R. Evid.
201. Defendants' RJN lists ten court filings, all pertaining
directly to this action. See Defs.' RJN (Doc. 328) at 1-3. The
first such filing is the Arizona Supreme Court decision in Fidelity
III, 225 Ariz. 307, 238 P.3d 118 (2010). Defendants' RJN also
includes the Ninth Circuit's decision, Fidelity IV, 402 Fed.Appx.
194 (9th Cir. 2010), and mandate issued in accordance therewith.
Third, defendants' RJN lists six filings in this action and a
filing in the related action in the federal court in California,
Fidelity Nat'l Fin., Inc. v. Friedman, No. CV 06-4271 CAS (JWJx).
Rather than relying upon any specific pleading, Fidelity simply
seeks to have this court take judicial notice of the docket sheet
herein. See Pls.' RJN (Doc. 330) at 1.

Pleadings and orders in this action, or others, are matters of public record and hence properly the subject of judicial notice. See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice, as a matter of public record, of "pleadings, memoranda, expert reports, etc., from [earlier] litigation[,]" which were thus "readily verifiable"); Kourtis v. Cameron, 419 F.3d 989, 994 n. 2 (9th Cir. 2005) (citation omitted) ("court records from related proceedings can be taken into account without converting a motion to dismiss into a summary judgment motion[ ]"), overruled on other grounds, Taylor v. Sturgell, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). Therefore, to the extent necessary to resolve this motion, the court grants the defendants' and Fidelity's respective RJNs.

The court is only taking judicial notice of those prior filings and orders to show, for example, that a prior proceeding occurred or that a certain argument or position was asserted therein. See, e.g., Faurie v. Berkeley Unified School District, 2008 WL 820682, at *2 n. 3 (N.D.Cal. March 26, 2008) (taking judicial notice of pleadings to "see what arguments Defendants advanced in" another court and "what that court ruled[]"); Mitchell v. Branham, 2008 WL 3200666, at *8 (S.D.Cal. Aug. 5, 2008) ("[d]ocuments that are part of the public record may be judicially noticed to show ... that a judicial proceeding occurred or that a document was filed in another court case[ ]"). The parties are not requesting that the court take judicial notice of factual findings made by other courts; and, indeed, the court could not do that. See Mitchell, 2008 WL 3200666, at *8 (citations omitted) ("[A] court may not take judicial notice of findings of facts from another

case.")

## II. *"Request for Ruling Consistent with Ninth Circuit Mandate"*

### *A. Rule of Mandate*

It is well settled in this Circuit that "'[w]hen a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.'" United States v. Luong, 627 F.3d 1306, 1309 (9th Cir. 2010) (quoting Firth v. United States, 554 F.2d 990, 993 (9th Cir. 1977)). An equally well settled corollary is that a district court "'may consider and decide any *matters left open by the mandate*[.]'" United States v. Thrasher, 483 F.3d 977, 981 (9th Cir. 2007) (quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 256 16 S.Ct. 291, 40 L.Ed. 414 (1895)) (emphasis added). Thus, on remand where "courts are often confronted with issues that were never considered by the remanding court[,] . . . [b]roadly speaking, mandates require respect for what the higher court decided, *not* for what it did not decide." United States v. Kellington, 217 F.3d 1084, 1093 (9th Cir. 2000) (internal quotation marks and citations omitted) (emphasis added). So, "although lower courts are obliged to execute the terms of a mandate, they are *free as to anything not foreclosed by the mandate*, and, under certain circumstances, an order issued after remand may deviate from the mandate if it is not counter to the spirit of the circuit court's decision." United States v. Perez, 475 F.3d 1110, 1113 (9th Cir. 2007) (internal quotation marks and citation omitted) (emphasis added). "[T]he ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower

court, from matters that have not[.]" Id. (internal quotation marks, citation, footnote and emphasis omitted).

In undertaking that task, "the Supreme Court [has] emphasized that, in addition to the mandate itself, '[t]he opinion by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate[.]'" Kellington, 217 F.3d at 1093 (quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 256, 16 S.Ct. 291, 40 L.Ed. 414 (1895)). "[I]n construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises." Id. at 1093.

The mandate here is exceedingly brief, indicating that the Ninth Circuit's judgment takes effect November 22, 2010. Defs.' RJN, exh. B thereto (Doc. 328-2) at 2. It concludes by specifying that it is "the formal mandate of this [Ninth Circuit] Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure." Id. Because the mandate is silent as to its scope, the court will look to the Ninth Circuit's opinion. When the court does that, it is readily apparent, as earlier mentioned, that the Ninth Circuit expressly left open the issues of renewal by affidavit in 2008 and renewal by registration in 2007. Thus, the mandate does not foreclose consideration of those two issues now. Consequently, this court may properly resolve those two issues without impermissibly exceeding the scope of the mandate.

**B. "2007 Certification"**

**1. Contents**

Section 12-1612(A) permits renewal of a judgment "by filing an affidavit for renewal with the clerk of the proper court." A.R.S.

- 11 -

§ 12-1612(A). The Friedmans argue that Fidelity did not renew the Arizona judgment by affidavit because it did not file a document pursuant to that statute specifically designated as a "renewal affidavit." Further, regardless of its title, and contrary to what Fidelity believes, the Friedmans argue that the 2007 Certification is not tantamount to a renewal affidavit because it does not include many of the details section 12-1612(B) specifies. Given that lack of detail, that 2007 Certification was "woefully inadequate" from the Friedmans' perspective in that it did not serve the notice purpose of that statute. <u>See</u> Defs.' RJN, exh. D thereto (Doc. 328-4) at 7:14.

Strenuously disagreeing, Fidelity claims that the 2007 Certification did provide the requisite notice because it "identifie[d] the parties, the court in which the judgment was docketed, the date and amount of judgment, and the owner of the judgment." Pls.' Resp. (Doc. 329) at 14:4-5. Fidelity also points out that "[t]he Friedmans do not dispute that they had notice of the 2007 renewal, nor do they contend that any other person lacked notice of the existence of the judgment." <u>Id.</u> at 14:7-8. Characterizing the omissions from the 2007 Certification as "alleged technical 'deficiencies[,]'" Fidelity further asserts they are not "misleading[.]" <u>Id.</u> at 14:22. Hence, Fidelity reasons that "if" such deficiencies "exist, [they] are all correctable" pursuant to Fed. R. Civ. P. 60(a) and its state counterpart, Ariz. R. Civ. P. 60(a). <u>Id.</u> at 14:21-22. Therefore, Fidelity argues that such "deficiencies" do not "'doom' the validity of the renewal." <u>Id.</u> at 14:8-9.

"[T]he statutory requirements must be strictly followed in

order that a judgment be renewed." <u>Triple E. Produce Corp. v. Valencia</u>, 170 Ariz. 375, 824 P.2d 771 (App. 1991) (citing, *inter alia*, <u>Fay v. Harris</u>, 64 Ariz. 10, 164 P.2d 860 (1945)). At the same time, however, "some defects contained in an affidavit may not defeat a renewal of judgment[.]" <u>State ex rel. Indus. Comm'n of Ariz. v. Galloway</u>, 224 Ariz. 325, 330 n. 5, 230 P.3d 708, 713 n.5 (App. 2010). For example, in <u>Weltsch v. O'Brien</u>, 25 Ariz.App. 50, 540 P.2d 1269 (App. 1975), the court held that "the failure to include in the renewal affidavit information as to the book and page of the clerk's docket in which the judgment sought to be renewed appears was not fatal and d[id] not affect the validity of the renewal." <u>Id.</u> at 53, 540 P.2d at 1272. Those omissions were of "no practical significance[,]" the court reasoned, because the information in the renewal affidavit "sufficiently identifie[d] the judgment sought to be renewed[.]" <u>Id.</u>

Likewise, in <u>Fay</u>, an arguably more significant error in a renewal affidavit, failure to "show the exact balance due[]" because of "errors in computation[,]" did not defeat renewal. <u>Fay</u>, 64 Ariz. at 11, 164 P.2d at 861. That error was not fatal to renewal, explained the <u>Fay</u> Court, because "*all of the items of the judgment appeared*, *all* of the *credits* were *set out*, the *data appeared* on the face of the affidavit, from which the *exact balance could be determined*." <u>Id.</u> (emphasis added). "Any party interested, under these circumstances, would have the right on notice, or the court would have the right to correct the judgment on its own motion[,]" the Court pointed out. <u>Id.</u> (citations omitted). Thus, the Court in <u>Fay</u> held that the judgment was properly renewed based upon the "data and correct computations"

which did "show the exact amount due." Id. at 14, 164 P.2d at 862.

Heavily relying upon Fay, the court in Triple E. reached a similar result. Due to an inadvertent failure to credit a payment made, in Triple E. the renewal affidavit incorrectly overstated the balance due on the judgment. The Triple E. court held that that error did not "prevent the judgment from being renewed[,]" but only "in the amount actually due and owing." Triple E., 170 Ariz. at 878, 824 P.2d at 774 (footnote omitted).

Admittedly, the renewal affidavits in Fay, Triple E. and Weltsch were each flawed in their own way. Significantly, despite those flaws, the judgment debtor and interested third parties could determine the balance due from the face of those renewal affidavits. Hence, those judgment creditors sufficiently complied with section 12-1612 because each provided the notice which that statute contemplates. See Weltsch, 25 Ariz. App. at 53, 540 P.2d at 1272 ("[O]ne of the purposes of A.R.S. § 12-1611 et seq. is to give notice to the judgment debtor and other interested parties of the identity of the judgment to be renewed."); J.C. Penney v. Love, 197 Ariz. 113, 119, 3 P.3d 1033, 1039 (App. 1999)(emphasis added) ("[O]ne of the purposes for the requirements concerning the affidavit of renewal is to give notice to the judgment debtor *and other interested parties* of the status of the judgment."); In re Smith, 209 Ariz. 343, 345, 101 P.3d 637, 639 (2004) (filing of a renewal affidavit "serves to notify interested parties of the existence and continued viability of the judgment."); but see J.C. Penney, 197 Ariz. at 119, 3 P.3d at 1039 (filing of a renewal affidavit "in a superior court in a county different from that in which its judgment was docketed, . . . did not provide reasonable

notice to interested persons of the status of the judgment and cannot be considered a correctable error[]").

Here, it is undisputed that on April 5, 2007, Fidelity did not file a document explicitly designated as a "renewal affidavit." Ordinarily, the court would be hesitant to exalt form over substance. Thus, merely inaccurately titling a document would not necessarily render it defective or somehow invalid. If the only omission from the 2007 Certification was the failure to properly designate it as a "renewal affidavit," in all likelihood, the court would overlook that omission. Failing to properly title the 2007 Certification as a "renewal affidavit" is not simply a matter of form given the legal import of an affidavit, however.

By definition, "[a]n 'affidavit' is a signed, written statement, made under oath before an officer authorized to administer an oath or affirmation in which the affiant vouches that what is stated is true." <u>In re Wetzel</u>, 143 Ariz. 35, 43, 691 P.2d 1063, 1071 (1984); <u>see also</u> Black's Law Dictionary (9th ed. 2009) (an affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths[]") The 2007 Certification itself is not signed and does not include a notary's jurat. A "'[j]urat' means a notarial act in which the notary certifies that a signer, . . . , has made in the notary's presence a voluntary signature and has taken an oath or affirmation vouching for the truthfulness of the signed document." A.R.S. § 41-311(6); <u>see also</u> A.R.S. § 12-2221(A) ("oath or affirmation shall be administered" to "best awaken the conscience and impress the mind of the person taking the oath or affirmation[]" and "shall be taken upon the penalty of perjury[]").

Additionally, the 2007 Certification is not a statement of any kind. It is a one page document, reciting the caption in this case and the names of Fidelity's attorneys and their contact information. <u>See</u> Defs.' RJN, exh. I thereto (Doc. 328-9) at 2. That Certification also notes the civil docket case number for the California federal court. <u>See</u> <u>id.</u> Plainly the 2007 Certification itself lacks even the most basic attributes of an affidavit of any sort.

Compounding Fidelity's failure to file a document specifically designated as a "renewal affidavit," and containing the essential components of such an affidavit, is that even taking into account the attachments to the 2007 Certification, the bulk of the information set forth in A.R.S. § 12-1612(B) is missing. Certified copies of the California judgment, the Ninth Circuit's dismissal order, and minutes of the California district court's dismissal order following issuance of the Ninth Circuit's mandate, are attached to the 2007 Certification. It is possible to glean from those attachments, as Fidelity emphasizes, the names of the parties, the court in which the California judgment was docketed, as well as the date, amount and owners of that judgment. That basic information is only a small portion of the contents of a renewal affidavit, however, as section 12-1612(B)(1) delineates.

Fidelity's additional renewal affidavit declares that it recorded the California judgment in Maricopa and Coconino Counties. <u>See</u> Defs.' RJN, exh. H thereto (Doc. 328-8) at 4:11-13, ¶ 7. Assuming those recordings were made prior to April 5, 2007, they should have been included in the 2007 Certification, along with "the name of the county in which recorded, . . . the number and

page of the docket book in which recorded by the county recorder[,]" as section 12-1612(B)(1) specifies. <u>See</u> A.R.S. § 12-1612(B)(1). The 2007 Certification and its attachments do not mention those County recordings at all.

The court could overlook the omission of those County recordings, especially, although unlikely, if they occurred after the filing of the 2007 Certification. However, the court cannot overlook, and what is far more troubling is, the absence of *any* of the information enumerated in the four other subparts of section 12-1612(B). In accordance with that statute, "[t]he judgment creditor, . . . may . . . , make and file . . . a renewal affidavit, . . . setting forth[,]" *inter alia*:

> 2. That no execution is anywhere outstanding and unreturned upon the judgment, or if any execution is outstanding, that fact *shall* be stated.

> 3. The *date and amount of all payments* upon the judgment and that *all payments* have been *duly credited* upon the judgment.

> 4. That there are *no set-offs or counterclaims* in favor of the judgment debtor, and if a counterclaim or set-off does exist in favor of the judgment debtor, the amount thereof, if certain, or, if the counterclaim or set-off is unsettled or undetermined, a statement that when it is settled or determined by action or otherwise, it may be allowed as a payment or credit upon the judgment.

> 5. The *exact amount due upon the judgment* after allowing all set-offs and counterclaims known to affiant, and *other facts or circumstances necessary to a* **complete disclosure** *as to the* **exact condition** *of the judgment*.

A.R.S. § 12-1612(B)(2)-(5) (emphases added). None of that enumerated information can be found in the 2007 Certification or its attachments.

Tellingly, the additional renewal affidavit which Fidelity

- 17 -

filed on February 8, 2008, as part of its response to the Friedmans' original motion to quash, mirrors section 12-1612(B) in its entirety. That later filed affidavit indicates that by February 20, 2007, prior to the filing of the 2007 Certification, Fidelity had collected nearly $15,000.00 in cash and two sets of coins having an unstated value. See Defs.' RJN , exh. H thereto (Doc. 328-8) at 4-5, ¶ 10. Those successful collection efforts are conspicuously absent from the 2007 Certification. Obviously, without that information the "exact amount due upon the judgment" on April 5, 2007, when the Certification was filed, cannot be ascertained. Moreover, section 12-1612(B)(2) is mandatory in terms of whether or not any execution of the judgment is outstanding. Despite that statutorily mandated obligation, Fidelity did not disclose that information anywhere in the 2007 Certification or its attachments.

Further, arguably the later filed additional renewal affidavit contains "other facts or circumstances necessary to a complete disclosure as to the exact condition of the judgment[]" – information of which Fidelity was fully aware of on April 5, 2007 when it filed its second Certification. See A.R.S. § 12-1612(B)(5). That renewal affidavit explains the filing of the RICO action by Fidelity on July 6, 2007. Defs.' RJN, exh. H thereto (328-8) at 5, ¶ 13. It also indicates that in that RICO action, "[o]n July 12, 2007, the court issued a preliminary injunction freezing defendants' assets and enjoining their transfer." Id. The additional renewal affidavit also states that "[o]n March 22, 2007, Fidelity recorded th[at] preliminary injunction in Maricopa County, Arizona, number 2007-0339883." Id. Neither the 2007

Certification nor any of its attachments mentions that litigation, which at least from Fidelity's perspective, bears directly on the judgment it is attempting to enforce herein.

Despite Fidelity's urging, the court cannot agree that the missing information described above amounts to nothing more than "technical omission[s] or errors" that should not "defeat the renewal of the judgment." See Weltsch, 25 Ariz.App. at 54, 540 P.2d at 1272. The omissions from the 2007 Certification are glaring and critical. In sharp contrast to Weltsch, where the clerk's docket number and page were omitted, the omissions here, such as "[t]he date and amount of all payments upon the judgment and that all payments have been duly credited upon the judgment[,]" A.R.S. § 12-1612(B)(3), are of "practical significance." See id. at 53, 540 P.2d at 1272. Without that information, neither judgment debtors nor interested third parties have any way to determine the amount outstanding on the judgment, thus thwarting the notice purpose of section 12-1612.

This is not a situation such as Fay where all of the information necessary to ascertain "the exact balance [of the judgment] could be determined from the face of the" 2007 Certification and its attachments. See Triple E, 170 Ariz. at 378, 824 P.2d at 774. Nor are the outright omissions from the 2007 Certification mere computational errors, as in Fay, where the amount due and owing was incorrect. Simply put, here, interested parties could not ascertain from the documents Fidelity filed on April 5, 2007, the exact outstanding balance of the California judgment. Likewise, they could not confirm whether execution on that judgment is outstanding – a fact which must be disclosed

pursuant to A.R.S. § 12-1612(B)(2).

Deficiencies in the 2007 Certification do exist, as is abundantly clear. And, although Fidelity asserts otherwise, those omissions are misleading. That is because section 12-1612(B) places equal import on disclosing the existence of set-offs, counterclaims, or outstanding executions, as it does on disclosing the lack of such items. Yet, Fidelity did not disclose the lack of any of the foregoing in its 2007 Certification or attachments. It was not until roughly ten months later that Fidelity disclosed that information in its additional renewal affidavit. <u>See</u> Defs.' RJN, exh. H thereto (Doc. 328-8)at 4, ¶ 9; at 5, ¶ 11.

Finally, the court finds unavailing Fidelity's bald assertion that the numerous omissions from the 2007 Certification and its attachments are mere "clerical mistakes . . . arising from oversight or omission" which are "correctable" under Fed. R. Civ. P. 60(a) and its state counterpart, Ariz. R. Civ. P. 60(a). <u>See</u> Pls.' Resp. (Doc. 329) at 14:9-11; and 14:22. Quite simply, Fidelity's omissions are not "clerical mistakes" within the meaning of those Rules.

In pertinent part, that Rule states:

> The court may correct a *clerical mistake* or a *mistake* arising *from oversight or omission* whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

Fed. R. Civ. P. 60(a) (emphasis added). Mirroring its Federal counterpart, Ariz. R. Civ. P. 60(a) states in relevant part:

> Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on motion of any party and after such notice, if any, as the

court orders.

That similarity is not a coincidence. "The Arizona Rules of Civil Procedure were adopted from the federal rules." La Paz County v. Yuma County, 153 Ariz. 163, 164, 735 P.2d 772, 774 (Ariz. 1987). Arizona state courts thus "give great weight to interpretations given to similar federal rules." Id. (citation omitted). Consequently, here, there is no reason to separately analyze the clerical mistake issue under Fed. R. Civ. P. 60(a) and Ariz. R. Civ. P. 60(a). Further, a singular analysis is in keeping with the notion that "uniformity in interpretation of [Arizona] rules and federal rules is highly desirable." See Orme Sch. v. Reeves, 166 Ariz. 301, 304, 802 P.2d 1000, 1003 (1990).

"The basic distinction between 'clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of 'blunders in execution' whereas the latter consist of instances where the court changes its mind[.]" Blanton v. Anzalone, 813 F.2d 1574, 1577 n. 2 (9th Cir. 1987). "It is a mistake in mechanics, rather than apprehension." Dearing v. United States, 1996 WL 523782, at *2 (E.D.Wash. 1996). "The focus of Rule 60(a) is 'on what the court originally intended to do.'" In re Fort Defiance Housing Corp., 2011 WL 1578504, at *4 (D.Ariz. April 27, 2011) (quoting Blanton, 813 F.2d at 1576). "[M]istakes under Rule 60(a) are not factual or legal and deal with the intent of the trial court." Id. (citation and footnote omitted) (emphasis added). Put differently, "Rule 60(a) errors are minor and ministerial ones, not substantively factual or legal." Id. at *4 n. 4 (internal quotations and citation omitted). Thus, Rule 60(a) "may not be used to correct substantial errors, such as errors of

law." <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033 (9th Cir. 1990) (citation omitted); <u>accord</u> <u>Sherrod v. Am. Airlines, Inc.</u>, 132 F.3d 1112, 1117 (5th Cir. 1998) (internal quotation marks and citation omitted) ("The relevant test for the application of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule.") What is more, Rule 60(a) does not permit a court to "correct something that was deliberately done but later discovered to be wrong." <u>McNickle v. Bankers Life and Cas. Co.</u>, 888 F.2d 678, 682 (10th Cir. 1989).

Fidelity's errors, in the form of omissions from the 2007 Certification and its attachments, were substantial, as discussed herein. Fidelity did not commit a mathematical error or an error in computation. <u>See</u> <u>In re Hale</u>, 359 B.R. 310, 318 (Bankr. E.D.Wash. 2007) (describing "[m]athematical errors" as "classic examples of clerical mistakes under Rule 60(a)). Likewise, Fidelity did not misidentify a party. <u>See</u> <u>Mitchell Repair Information Co. v. Rutchey</u>, 2009 WL 3242093 (W.D.Wash. Oct. 2, 2009) (granting Rule 60(a) relief correcting the judgment to include defendant's "true name" in addition to his alias). Rather, Fidelity omitted from the 2007 Certification the majority of the information A.R.S. § 12-1612(B) specifies for a renewal affidavit. Those substantive factual and legal omissions left judgment debtors and interested third parties alike uncertain, in many respects, as to the status of the California judgment. Accordingly, that 2007 Certification did not serve the essential purpose of A.R.S. § 12-1612(B) – notice. Those omissions had nothing to do with this

court's intent.  Hence, if for no other reason, because Fidelity has not shown that the omissions from the 2007 Certification were clerical mistakes, it has no basis for seeking or obtaining relief under federal or state Rule 60(a).

To summarize, Fidelity's 2007 Certification did not serve, in accordance with A.R.S. § 1612(B), to renew its 2002 Arizona judgment because that Certification is not specifically designated as a renewal affidavit.  More problematic is that even considering the 2007 Certification's attachments, that Certification has almost none of the characteristics of a renewal affidavit.  Lastly, there is no basis whatsoever for "correcting" Fidelity's 2007 Certification under either Fed.R.Civ.P. 60(a) or Ariz. R. Civ. P. 60(a).  Consequently, Fidelity's 2007 Certification did not serve to renew its 2002 Arizona judgment, as section 1612(B) permits.

### *2.  Timeliness*

Even assuming *arguendo* that the 2007 Certification "was sufficient to operate as a renewal affidavit . . . ," nonetheless, the Friedmans contend that it was "premature[,]" because that Certification was not filed within the time frame set forth in A.R.S. § 1612(B).  <u>See</u> Defs.' Mot. (Doc. 327) at 5:23.  The Friedmans thus argue that that Certification was "ineffective[]" to renew the 2002 Arizona judgment.  <u>See</u> <u>id.</u> at 5:24.

Also assuming *arguendo* that the 2007 Certification is a renewal affidavit, Fidelity does not directly dispute the untimeliness of that filing.  Instead, Fidelity is taking the position that because it "took the debtor examination of [defendant] Anita Meshkatai" within the time frame for the filing of a renewal affidavit, *i.e.*, within 90 days of the expiration of

the 2002 Arizona judgment, that "examination gave notice of the Arizona judgment *and* its renewal." Pls.' Resp. (Doc. 329) at 14:26 (emphasis added). Strenuously disagreeing, the Friedmans counter that "[k]nowledge [by] a judgment debtor does not excuse a judgment creditor from following Arizona law[,]" requiring the timely filing of a renewal affidavit. Defs.' Reply (Doc. 332) at 10:1-2.

Defendants have the stronger argument by far. Essentially that is because Arizona requires strict compliance with its judgment renewal statutes, and Fidelity did not so comply. Furthermore, Mrs. Meshkatai's judgment debtor examination did not provide the notice which those renewal statutes contemplate.

Fidelity registered its California judgment pursuant to 28 U.S.C. § 1963. As relevant at this juncture, that statute provides in part that a judgment registered thereunder "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963. Rule 69(a)(1), governing the procedure for execution on money judgments "is to the same effect[.]" Hilao v. Estate Marcos, 536 F.3d 980, 987 (9th Cir. 2008). That Rule states in pertinent part:

> The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1). "To paraphrase, Rule 69 provides that state law applies generally, but a federal statute governs to the extent it applies." Office Depot Inc. v. Zuccarini, 596 F.3d 696, 701 (9th Cir. 2010).

There is no federal statute specifically governing renewal of judgments. Hence, treating the 2007 Certification as a

"proceeding[] supplementary to and in aid of judgment or execution[,]" as do the parties, Arizona law governs the renewal of the Arizona judgment herein.  See In re Davis, 323 B.R. 745, 748 (Bankr. D.Ariz. 2005) (citing Fed. Bankr. R. 7069, incorporating Rule 69(a)(1), Arizona law governs renewal of bankruptcy court judgment registered in Arizona); accord In re Fifarek, 370 B.R. 754, 759 (Bankr.W.D.Mich. 2007) ("Rule 69(a) mandates the practice and procedure of the State of Michigan be utilized to enforce or renew the prior bankruptcy court judgment."); Lillie v. Hunt, 323 B.R. 665 (Bankr.W.D.Tenn. 2005) (applying Tennessee state rule pertaining to renewal of judgments to judgment registered in Tennessee District Bankruptcy Court).   Likewise, because 28 U.S.C. § 1963, the statute under which Fidelity registered the California judgment, "has no limitations period[,]" this court will "look[] to the law of the registration forum[,]" i.e., Arizona, "for its statute of limitations on enforcement of judgments."  See Hilao, 536 F.3d at 988 (citing cases).

"In Arizona, a judgment becomes unenforceable after five years from the date of entry unless action is taken to renew it." In re Smith, 209 Ariz. 343, 101 P.3d. 637; see also Crye v. Edwards, 178 Ariz. 327, 238, 878 P.3d 665, 666 (App. 1993) ("monetary judgments expire in Arizona if not renewed every five years").   Section 12-1551(B) specifically provides:

> An execution or other process shall not be issued upon a judgment after the expiration of five years from the date of its entry unless the judgment is renewed by affidavit or process pursuant to § 12-1612 or an action is brought on it within five years from the date of the entry of the judgment or of its renewal.

- 25 -

A.R.S. § 12-1551(B) (emphasis added). Thus, under that statute, "it is the judgment creditor who must act to prevent expiration, not the debtor who must act to achieve it." <u>Crye</u>, 178 Ariz. at 329, 873 P.2d at 666. So, quite simply, "[i]f the creditor fails to renew the judgment, it expires. The judgment debtor need do nothing." <u>Id.</u> at 328-329, 873 P.2d at 666-667.

At issue now is the timeliness of Fidelity's purported renewal affidavit, *i.e.*, the 2007 Certification, under A.R.S. § 12-1612(B). Pursuant to that statute, a "judgment creditor need only file an affidavit, in a form specified by statute, within a ninety day period before the judgment expires to obtain renewal and maintain the priority of the original judgment." <u>Fidelity III</u>, 225 Ariz. at 311, 238 P.3d at 122 (footnote omitted).

Arizona courts have consistently held that "strict compliance with the renewal provisions is required to effect a renewal." <u>Galloway</u>, 224 Ariz. at 329-330, 230 P.3d at 712-713 (citing cases) (footnote omitted). That is especially so with respect to the timeliness of a renewal affidavit, as the <u>Galloway</u> court explained. While "recogniz[ing] that some defects contained in an affidavit may not defeat a renewal of judgment," that court stressed that "*timeliness* of the affidavit is a *rigid statutory requirement* and is *not* subject to modification by the court." <u>Id.</u> at 330 n.5, 230 P.3d at 713 n. 5 (citations omitted) (emphasis added).

<u>Mobile Discount Corp. v. Hargus</u>, 156 Ariz. 559, 753 P.3d 1215 (App. 1988), illustrates just how critical the timely filing of an affidavit of renewal is in Arizona. A.R.S. § 12-1612(E), governing the filing of additional and successive renewal affidavits, allows for the filing of same "*within ninety days of*

- 26 -

*expiration* of five years from the date of the filing of a prior renewal affidavit." A.R.S. § 12-1612(E) (emphasis added). Finding "[t]he language of th[at] statute" to be "plain and unambiguous[,]" the <u>Mobile Discount</u> court held that the italicized phrase "means within 90 days *before* expiration and not 90 days after expiration." <u>Mobile Discount</u>, 156 Ariz. at 560, 753 P.2d at 1216. The court thus held that a second renewal affidavit, recorded just "16 days past the expiration of five years from the filing and recordation of the first affidavit of renewal[,]" was not timely. <u>Id.</u>

To be sure, the <u>Mobile Discount</u> court was considering the filing of a second renewal affidavit under subsection (E), and not, as here, the filing of an initial renewal affidavit under subsection (B) of A.R.S. § 12-1612. <u>Mobile Discount</u> is no less instructive on the issue of whether the 2007 Certification was timely filed, however. That is because sections 1612(E) and 1612(B) contain substantially similar language as to the time frame for filing under each. Much like A.R.S. § 12-1612(E), section 12-1612(B) specifies that the time for filing a renewal affidavit is "within ninety days preceding the expiration of five years from the date of entry of . . . judgment[.]" A.R.S. § 12-1612(B). Thus that statute, too, is "plain and unambiguous[]" as to the time frame for filing a renewal affidavit. <u>See</u> <u>Mobile Discount</u>, 156 Ariz. at 560, 753 P.2d at 1216. A renewal affidavit must be filed within 90 days before "the expiration of five years from the date of entry of . . . judgment[]" – not some indefinite time prior thereto. <u>See</u> A.R.S. § 1216(B).

"[O]ne of the purposes for the requirements concerning the affidavit of renewal is to give notice to the judgment debtor and

other interested parties of the status of the judgment." <u>J.C.</u>
<u>Penney</u>, 197 Ariz. at 119, 3 P.3d at 1039 (citations omitted).
"Among the parties most interested in the status of the judgment
are those considering extending credit to the judgment debtor."
<u>Fidelity III</u>, 225 Ariz. at 311, 238 P.3d at 122.  In addition to
providing notice, "the filing requirements of" Arizona's statutes
allowing for renewal by affidavit "limit the amount of record
searching interested parties must do to ascertain whether the
judgment remains valid." <u>Smith</u>, 209 Ariz. at 346, 101 P.3d at 640
(citation omitted).  Strict statutory adherence to the renewal
statutes thus is essential to serve "their central purpose" –
notice.  <u>See</u> <u>Fidelity III</u>, 225 Ariz. at 311, 238 P.3d at 122.

Here, even deeming the 2007 Certification to be a renewal
affidavit (which the court has already found that it was not), it
is evident that Fidelity did not file that Certification within the
time frame section 12-1612(B) imposes.  Fidelity registered its
California judgment pursuant to 28 U.S.C. § 1963 by filing a
certified copy of that judgment in this district court on November
14, 2002.  <u>See</u> Pls.' RJN (Doc. 330) at 10.  Relying upon A.R.S.
§ 12-1551(A), the Friedmans declare that the Arizona judgment "was
effective for a period of five years from the *date of docketing*."
Defs.' RJN, exh. D thereto (Doc. 328-4) at 4:11-12 (emphasis
added).  So, when calculating the time for filing a renewal
affidavit under that statute, the Friedmans use November 14, 2002 –
Fidelity's original registration date.   <u>See</u> <u>id.</u> at 4:21-5:3.

Before proceeding, some clarification is necessary.  First, in
computing the time frame for filing a renewal affidavit pursuant to
section 12-1612(B), the date of the "entry of such judgment"

governs, not the "date of docketing" as the Friedmans presume.[9]
See A.R.S. § 12-1612(B). That distinction is especially relevant
here because whether looking to the California judgment, or, as the
Friedmans do, to the Arizona judgment, the filing dates are
different than the entry dates. The California judgment was filed
on July 10, 2002, but not entered until July 12, 2002. Defs.' RJN,
exh. I thereto (Doc. 328-9) at 8. Likewise, the Arizona judgment
was filed on November 14, 2002, but not entered until November 18,
2002. Pls.' RJN (Doc. 330) at 10. As A.R.S. § 12-1612(B)
mandates, this court will use the date of entry – not the docketing
date, as the Friedmans urge.

Next, the court must consider which "judgment" forms the basis
for computing the date by which Fidelity had to timely file a
renewal affidavit based upon Arizona statute. Section 12-1612(B)
requires that renewal affidavits be made and filed "within ninety
days preceding the expiration of five years from the *date of entry
of such judgment*[.]" A.R.S. § 12-1612(B) (emphasis added).
Assuming with no explanation that registering a judgment pursuant
to 28 U.S.C. § 1963 is the equivalent of entry of a judgment in the
first instance, the Friedmans base their timeliness argument only
on the Arizona judgment, entered on November 18, 2002. That
assumption finds support in the Ninth Circuit's settled view that
registration of a judgment under 28 U.S.C. § 1963 is "the
functional equivalent of obtaining a new judgment of the
registration court." See Hilao, 536 F.3d at 989 (citing Matanuska

---

[9] Perhaps the Friedmans are using the date of docketing because A.R.S. §§ 12-1612(A) refers to "[a] judgment . . . which has been entered *and* docketed in the civil docket . . . of the United States District Court[.]" A.R.S. §§ 12-1612(A) (emphasis added). Even so, the Friedmans did not take into account that that phrase is in the conjunctive, requiring both entry and docketing.

- 29 -

<u>Valley Lines, Inc. v. Molitor</u>, 365 F.2d 358, 360 (9th Cir. 1966);

<u>Marx v. Go Publ'g Co.</u>, 721 F.2d 1272, 1273 (9th Cir. 1983)).

Consistent with that view, in determining whether Fidelity's purported renewal affidavit was timely, the relevant judgment is the Arizona, not the California, judgment. For these reasons, the court finds that when calculating the time frame for filing a renewal affidavit in this particular case: (1) the date of entry of the judgment governs; and (2) the pertinent judgment is the Arizona judgment.

With that clarification, even if Fidelity's 2007 Certification fit the statutory definition of a renewal affidavit under Arizona law, that Certification was not timely. Based upon the Arizona judgment's entry date of November 18, 2002, "within ninety days of [November 18, 2007], or the expiration of five years from the entry of the Judgment, [Fidelity] w[as] required to file [its] first renewal affidavit." <u>See</u> <u>Davis</u>, 323 B.R. at 750 (citing A.R.S. § 12-1612(B)) (footnote omitted). In other words, Fidelity had a 90 day window commencing roughly August 20, 2007, in which to file its renewal affidavit. Fidelity did not do that; it filed its purported renewal affidavit (the 2007 Certification), on April 5, 2007, approximately 225 days prior to the expiration of its Arizona judgment. Given the unequivocal language of A.R.S. § 12-1612(B), undoubtedly, Fidelity did not file that Certification within the statutorily prescribed time frame. That premature filing renders the 2007 Certification ineffective to renew the Arizona judgment by the filing of an affidavit. <u>Cf</u>. <u>Galloway</u>, 224 Ariz. at 330, 230 P.3d at 713 (creditor's 16 month "premature filing of its renewal

affidavit" was "ineffective").[10]

The court is fully aware, as Fidelity mentions, that ultimately the Galloway court found that the "prematurity of the renewal affidavit" did not preclude the judgment creditor from proceeding with that garnishment action. See id. Even if, as Fidelity maintains, the "ruling on the validity of the renewal affidavit was . . . unnecessary to the holding" in Galloway, that does not somehow excuse Fidelity's premature filing of the purported renewal affidavit, *i.e.*, the 2007 Certification. Unquestionably, the timing of the filing of a renewal affidavit is critical.

Indeed, earlier in this litigation the Arizona Supreme Court unequivocally stated:

> [T]he judgment debtor will be released from further obligation unless a judgment creditor *timely* files a renewal affidavit or brings an action on the judgment within five years after its entry.

Fidelity III, 225 Ariz. at 311, 238 P.3d at 122 (emphasis added). Fidelity did not comply with the time frame for filing a renewal affidavit under Arizona's statutes. Those statutes reflect the Arizona state legislature's determination that renewal affidavits must be filed within the time frame specified therein. It is not

---

[10] Using the entry date of the California judgment yields the same result. Based upon an entry date of July 12, 2002, "within ninety days of [July 12, 2007], or the expiration of five years from the entry of the Judgment, [Fidelity] w[as] required to file [its] first renewal affidavit." See Davis, 323 B.R. at 750 (citing A.R.S. § 12-1612(B)) (footnote omitted). Under that calculation, Fidelity had a ninety day window commencing roughly April 17, 2007, in which to file its renewal affidavit. Fidelity's purported renewal affidavit (the 2007 Certification) was filed prematurely, on April 5, 2007. Admittedly, that April 5th filing was not nearly as premature as the filing based upon the Arizona judgment's entry date. That time difference is immaterial though. Arizona statutes governing renewal by affidavit do not make allowances for varying from the ninety day window, regardless of how near to that window a given filing may be. Therefore, even calculating the time frame for filing a renewal affidavit based upon the entry date of the California judgment, still, Fidelity did not comply with that time frame under Arizona renewal statutes. Such a premature filing also renders the 2007 Certification ineffective to renew the California judgment by the filing of an affidavit.

within this court's prerogative to alter that time frame by, for example, arbitrarily allowing, as here, a purported renewal affidavit to be filed well in advance of that 90 day window.

Fidelity makes an attempt to show its compliance with section 12-1612(B)'s 90 day window. Fidelity points out that on August 24, 2007, within that statutory window, it conducted a judgment debtor examination of Mrs. Meshkatai. The taking of that deposition, reflected not in a filing by Fidelity, but only in a minute entry on the court's docket (stating that it was "held" and took four and a half hours), can hardly be said to provide the requisite notice that the Arizona judgment was renewed. See Pls.' RJN (Doc. 330) at 24. That meager docket entry certainly does not "serve[] to notify interested parties of the existence and continued viability" of the Arizona judgment. See Smith, 209 Ariz. at 345, 101 P.3d at 639.

Furthermore, this theory of renewal by deposition is just a narrower variant of Fidelity's theory, argued unsuccessfully in Fidelity III, that "a judgment could be renewed by 'any matter or proceeding in a court, civil or criminal[.]'" See Fidelity III, 225 Ariz. at 311, 238 P.3d at 122. Under that theory:

> [a] potential lender would be required to search the records of at least every court in the state —and perhaps the nation—to determine whether a writ of garnishment or other proceeding relating to the judgment[,such as a judgment debtor's examination,] had been instituted.

See id. (citations omitted). In contrast, section 12-1612, allowing for renewal by affidavit, provides a far less tedious and more efficient means of notification. Under that statute, "a potential creditor need only search the docket of the court in which the original judgment was entered for the ninety days

preceding the five-year expiration date to determine whether a judgment has been renewed by affidavit." <u>Id.</u> Adopting the sound reasoning of the <u>Fidelity III</u> Court, this court likewise concludes that:

> It would make little sense for the legislature to have provided strict temporal and filing limitations on the affidavit process, while at the same time allowing any action relating to the judgment, filed anywhere, to renew it.

<u>Id.</u> Consequently, Fidelity's judgment debtor examination of Mrs. Meshkatai is not a substitute for the timely filing of a renewal affidavit under A.R.S. § 12-1612.

"Inherent in any statute of limitations is the risk that a party who owes money may escape liability if the creditor does not act in a *timely* fashion." <u>Id.</u> (emphasis added). That is precisely what happened to Fidelity. Fidelity had available to it "a simple mechanism for renewing the [Arizona registered] judgment." <u>See id.</u> As "[t]he judgment creditor[,]" Fidelity "need[ed] only [to] file an affidavit, in a form specified by statute, within a ninety day period before the [Arizona registered] judgment expire[d][,]" but Fidelity did not do that. <u>See id.</u> Fidelity's 2007 Certification did not contain most of the information set forth in A.R.S. § 12-1612(B). Therefore, it did not constitute a "renewal affidavit" within the meaning of that statute.[11] Even construing that 2007 Certification as a "renewal affidavit," Fidelity cannot rely upon it to renew the Arizona judgment because Fidelity did not file that Certification within section 12-1612(B)'s 90 day window before the

---

[11] This finding that Fidelity's 2007 Certification did not constitute a "renewal affidavit" as A.R.S. § 12-1612(B) defines it, renders moot the Friedmans' alternative argument that Fidelity's 2008 additional renewal affidavit, discussed next, "operates as an admission that th[at] Certification did not meet the requirements of A.R.S. § 1612(B) and was, therefore, invalid." <u>See</u> Defs.' Mot. (Doc. 327) at 7:23-24.

expiration of that judgment.

### C. 2008 "Additional Renewal Affidavit"

Having found that the 2007 Certification is not tantamount to a renewal affidavit under section 12-1612(B) and, alternatively, that that Certification was not timely filed, the court turns to Fidelity's 2008 additional renewal affidavit. Fidelity is taking the position that that affidavit, too, renewed the Arizona judgment.

As part of its response to the Friedmans' original 2008 motion to quash, Fidelity attached a document entitled, "Additional Renewal Affidavit Renewing the Judgment Registered in Arizona on November 15, 2002," which was being "submitted under A.R.S. § 12-1612(B) and (E)." Defs.' RJN, exh. H thereto (Doc. 328-8) at 2 (emphasis omitted); and at 3:16-17, ¶ 3. That additional renewal affidavit is "ineffective" to renew the Arizona judgment, the Friedmans argue, because it "was filed on February 7, 2008, more than five years after the Judgment was registered." Defs.' Mot. (Doc. 327) at 7:15-16 (citations omitted).

Timeliness aside, there is a more fundamental shortcoming with Fidelity's additional affidavit. It cannot serve to "cure[] any deficiencies in the original [April 5, 2007] Renewal request[,]" as Fidelity claims, Pls.' Resp. (Doc. 329) at 15:9, because the 2007 Certification did not constitute a renewal affidavit, as earlier discussed in section (B)(1) above. A.R.S. § 12-1612(E) allows for, *inter alia*, "[a]dditional . . . renewal affidavits as provided for in subsection B [to] be made and filed within ninety days of expiration of five years from the date of the filing of a *prior renewal affidavit*." A.R.S. § 12-1612(E) (emphasis added). The

- 34 -

filing of a valid "prior renewal affidavit" thus is a predicate to the filing of an additional renewal affidavit under that statute. It follows, *a fortiori*, that because Fidelity did not file a "renewal affidavit" within the meaning of A.R.S. § 12-1612(B), necessarily there could be no "additional . . . *affidavit*" as section 12-1613(E) allows.  See A.R.S. § 12-1612(E) (emphasis added).  Thus, there is no merit to Fidelity's claim that the filing of an additional renewal affidavit on February 7, 2008, renewed its California judgment entered here on November 18, 2002.[12]

### D.   2007 "Re-Registration"

Arizona's renewal statutes notwithstanding, Fidelity asserts that in accordance with federal law, more particularly, 28 U.S.C. § 1963, on April 5, 2007, it "validly registered the California judgment."  Pls.' Resp. (Doc. 329) at 9:2 (emphasis omitted). Relying exclusively upon the Fifth Circuit's decision in <u>Del Prado v. B.N. Development Co.</u>, 602 F.3d 660 (5th Cir. 2009), Fidelity contends that "registration of its California judgment in Arizona in 2002 did not preclude [that] second registration in 2007."[13]  <u>See</u> Pls.' Resp. (Doc. 329) at 13:14-15.  Additionally, Fidelity argues that its April 5, 2007, re-registration was timely because it was filed within Arizona's four year statute of limitations governing

---

[12]    The timing of the filing of Fidelity's 2008 additional renewal affidavit is questionable.  It appears that Fidelity did not file that affidavit wholly of its own volition.  Seemingly, Fidelity may have been unaware of the statutory requirements for filing a renewal affidavit until they were brought to its attention by the Friedmans as a possible basis for quashing Fidelity's 2007 Certification.  It was not until then that, attached to its response to the Friedman's motion, Fidelity submitted its "additional renewal affidavit," which at least in content mirrors A.R.S. § 12-1612(B).  <u>See</u> Defs.' RJN, exh. H thereto (Doc. 328-8).

[13]    Fidelity inaccurately quotes the 2007 Certification as stating that it was filed "'under 28 U.S.C. § 1963'[,]" but that Certification is void of any such reference.  <u>See</u> Pls.' Resp. (Doc. 329) at 7:22-25 (citing Defs.' RJN, exh. I thereto). As with the 2002 Certification, however, the court presumes that section 1963 is the statutory basis for the filing of the 2007 Certification as well.

the enforcement of foreign judgments, *i.e.*, A.R.S. § 12-544(3).
Thus, even if this court finds, as it has, that Fidelity did not
properly renew its judgment under Arizona law, Fidelity maintains
that that judgment is still enforceable because in 2007 it timely
re-registered that judgment here pursuant to 28 U.S.C. § 1963.

Disagreeing, the Friedmans contend that: (1) "federal law does
not permit a second registration of a judgment in the same foreign
court[;]" and (2) Fidelity's reliance upon Del Prado is
"misplaced." Defs.' Reply (Doc. 332) at 6:16-17 (emphasis
omitted); and at 6:27. Then, stressing that because the
"California Judgment was final and enforceable in 2002[,]" id. at
5:7-8, the Friedmans retort that the 2007 "[c]ertification is not a
[v]alid [i]ndependent [r]egistration of th[at] California
[j]udgment in Arizona." Id. at 3:23-24 (emphases omitted).
Consequently, despite the purported 2007 "re-registration," the
Friedmans counter that because Fidelity did not properly renew its
Arizona judgment in accordance with Arizona's renewal statutes,
that judgment is no longer enforceable.

### 1. *"Re-registration" under 28 U.S.C. § 1963*

Section 1963 allows, *inter alia*, money judgments entered in a
district court to be registered in another district court in
several situations. Under one scenario, such registration is
allowed "when ordered by the court that entered the judgment for
good cause shown." 28 U.S.C. § 1963. On July 12, 2002, Fidelity
entered its judgment against defendants in the California federal
court. Defs.' RJN, exh. I thereto (Doc. 328-9) at 8. Without
explicitly finding good cause, that California Court issued an
order "allow[ing] [Fidelity] to register its judgment in the State

of Arizona." See id. at 14. The California federal court also issued a "Certification of Judgment for Registration in Another District[.]" Id. at 3. Consistent with section 1963, on November 14, 2002, Fidelity registered its California judgment in this Arizona federal district court. See Pls.' RJN (Doc. 330) at 10.

More than four years after issuing the first Certification of Judgment, on January 31, 2007, the California federal court issued a second "Certification of Judgment for Registration in Another District[.]" Defs.' RJN, exh. I thereto (Doc. 328-9) at 3. That 2007 Certification indicates that the appeal of Fidelity's 2002 California judgment was "dismissed by order entered May 15, 2003." Id. As did the 2002 Certification, this 2007 Certification pertains to Fidelity's underlying California judgment. See id. Because 28 U.S.C. § 1963 allows, *inter alia*, registration of a foreign judgment "when the judgment has become final by appeal[,]" Fidelity asserts that when it filed that second certification in this district court on April 5, 2007, it "met all the criteria under" that statute "for registering a federal judgment in another district." Pls.' Resp. (Doc. 329) at 9:15-16. Fidelity thus reasons that even if it did not properly and timely renew its judgment under Arizona law, that judgment remains valid and enforceable here because in 2007 it properly "re-registered" that judgment under section 1963.

Based solely upon the Fifth Circuit's decision in Del Prado, 602 F.3d 660, Fidelity contends "registration of its California judgment in Arizona in 2002" pursuant to 28 U.S.C. § 1963 "did not preclude a second registration [under that statute] in 2007." See id. at 13:14-15. For two reasons, Del Prado has no

bearing on the re-registration issue currently before this court.

First, unlike Ninth Circuit case law, cases outside this Circuit, such as Del Prado, are not binding on this court. Second, there is a fundamental difference between the issue of successive registrations in Del Prado and the re-registration issue currently before this court. As the Del Prado Court framed it, the issue was "whether a judgment entered in one federal court and then *registered* in a *second* federal court pursuant to 28 U.S.C. § 1963, may be *re-registered* and enforced in a *third* federal court, a process termed 'successive registration.'" Del Prado, 602 F.3d at 662 (emphasis added).

Del Prado had its genesis in a lawsuit brought in the District Court for the District of Hawaii against Ferdinand Marcos, the former president of the Philippines. In 1995, that Hawaii District Court entered a nearly $2 billion judgment in favor of the plaintiffs. In 1997, plaintiffs registered that judgment in the Northern District of Illinois. In 2005, plaintiffs also registered the Hawaiian judgment in the Northern District of Texas. Prior to being registered in Texas, however, the original judgment had expired under Hawaii law. In 2008, returning to the Northern District of Illinois, the plaintiffs revived the Illinois registered judgment in accordance with Illinois state law. Shortly thereafter, pursuant to 28 U.S.C. § 1963, plaintiffs registered that revived Illinois judgment in the Northern District of Texas.

The Fifth Circuit in Del Prado held that because the Hawaiian judgment expired prior to its registration in Texas, it could "not be registered and enforced by the Texas federal district court." Id. at 664. On the other hand, the Fifth Circuit held that the

revived Illinois registered judgment could be "re-registered in the Northern District of Texas and enforced" there.  Id. at 667. "Examining parallel situations in our federal-state system[,]" persuaded the Del Prado Court that "[g]iven the ability of a plaintiff to enforce his judgment from one state to another state, and between state and federal courts, it would be strange indeed for Congress to intend for § 1963 to yield the incongruous result that federal judgments, when registered in another federal district court, are not entitled to their full effect."  Id. at 669.  The Court thus concluded that "[b]ecause the Illinois registered judgment was equivalent to a new federal judgment with the same status as a judgment on a judgment, it was also capable of being successively registered and enforced under § 1963 in the Northern District of Texas."  Id.

Clearly this is not a case, as in Del Prado, of successive registration in different federal courts.  In this action, Fidelity did not attempt to register the California judgment in two different federal courts.[14]  Rather, Fidelity registered that judgment in this Arizona district court and then sought to register that same judgment for a second time also in this same district court.  This important distinction undermines Fidelity's reliance upon Del Prado.  The court therefore agrees with the Friedmans that Fidelity's reliance upon Del Prado is "misplaced."  See Defs.' Reply (Doc. 332) at 6:27.

Significantly, the court does not agree with the Friedmans however that no case law exists "allow[ing] the re-registration of

---

[14]     Fidelity's subsequent registration in another federal court, the Western District of Washington, is the subject of a related action Fidelity National Financial, Inc. v. Friedman, 11-mc-00072-PHX-RCB, and pending motions.

one judgment in the same foreign state more than once[.]" See id. at 7:21-22. Such case law does exist, albeit Fidelity did not mention it. Given the similarity between Irby v. Haden, 2008 WL 2561958 (N.D.Cal. June 25, 2008), and the present case, Irby is instructive on the re-registration issue herein and warrants careful examination.

After obtaining a judgment against a defendant in the United States District Court for the Southern District of Texas ("Texas judgment") pursuant to 28 U.S.C. § 1963, plaintiff registered that judgment in a California federal court in 1996. California state law provides that a judgment is enforceable for ten years. Much like Arizona, California statutes provide two ways "to preserve a judgment[]" from expiration. Id. at *3. The first way is to file an application for renewal of the judgment under the California Code of Civil Procedure ("the California Code"), which "automatically renews the judgment for another period of ten years." Id. (citation omitted). Alternatively, the California Code permits a judgment creditor to preserve a judgment by bringing a separate action on the judgment. The judgment creditor in Irby did neither. Consequently, in 2006, ten years after the registration of the California judgment, it "expired by operation of [California state] law[.]" Id. at *1.

Returning to the Southern District of Texas, in 2008 plaintiff "obtained a new Certification of Judgment[,]" also based upon the original underlying Texas judgment. Id. More than 12 years after she first registered her Texas judgment in California, plaintiff re-registered that judgment in the same California federal district court where she previously registered it. Moving to vacate the re-

- 40 -

registered judgment because it was "based on the original . . . registration of the judgment, which had expired in August 2006[,]" the defendant debtor argued that the plaintiff could not "save that judgment from expiration by registering the original underlying Texas judgment a second time." Id. at * 1; *4. Plaintiff "respond[ed] that, so long as the original underlying Texas judgment was, and is, still enforceable, it may be re-filed in California, and is entitled to recognition as a judgment worthy of enforcement under California law." Id. at *4. Agreeing, the Irby court found "permissible . . . plaintiff's timely renewal of the underlying judgment in Texas and subsequent re-registration of the same judgment in California[.]" Id. at *5.

At the outset, the Irby court framed the issue generally as "whether a plaintiff who registers a foreign judgment in California and then allows that judgment to go dormant under California law, can subsequently re-register that same judgment as a new judgment (thereby commencing the enforcement period all over again) so long as the underlying judgment remains valid in the foreign state." Id. at *2. Recognizing that in accordance with 28 U.S.C. § 1963, the California registered judgment at issue in Irby was governed by the enforcement measures of California, as the forum state for registration, that court discussed the California statutes pertaining to preservation of judgments.

Noting the lack of "controlling Ninth Circuit authority[,]" the Irby court began its analysis with the "principle[] of law . . . that so long as an originating state has an enforceable judgment, that judgment is entitled to full faith and credit in the foreign state in which a plaintiff seeks enforcement." Id. at *4

(citing, *inter alia*, <u>Watkins v. Conway</u>, 385 U.S. 188, 87 S.Ct. 357, 17 L.Ed.2d 286 (1966)).  The <u>Irby</u> court then summarized just two cases  – the Supreme Court's decision in <u>Watkins</u>, and <u>Yorkshire West Capital, Inc. v. Rodman</u>, 149 P.3d 1088 (Okla.Civ.App.Div. 2006) – which were the bases for its holding.

<u>Watkins</u> involved the attempted enforcement of a Florida state judgment in Georgia state courts.  Five years and one day after the rendering of the Florida judgment, plaintiff brought an action on that judgment in a Georgia state court.  Georgia has a five year statute of limitations for foreign judgments, but a longer limitation period for domestic judgments.  Critically, at the time however, the Georgia statute "bar[red] suits on foreign judgment *only if* the plaintiff [could] not revive his judgment in the State where it was originally obtained."  <u>Watkins</u>, 385 U.S. at 189, 191, 87 S.Ct. 357 (emphasis added).

Under that Georgia statute the relevant date was "not the date of the original judgment, but rather . . . the date of the latest revival of the judgment."  <u>Id.</u> at 189, 87 S.Ct. 357 (citations omitted).  Therefore, given Florida's 20 year statute of limitations on domestic judgments, the Supreme Court found plaintiff had "ample time" to "return to Florida and revive his judgment."  <u>Id.</u> at 190 and n. 2 (citation omitted), 87 S.Ct. 357. The Supreme Court thus suggested that the plaintiff could return to "Georgia within five years and file suit free of" Georgia's five year statute of limitations for foreign judgments.  <u>Id.</u>

Because Watkins could revive his judgment in Florida, and return to Georgia to enforce it, the Supreme Court declared "that the Georgia statute [did] not discriminate[] against the judgment

from Florida." *Id.* Explaining, the Court hypothesized that "[i]f Florida had a statute of five years or less on its own judgment, the [plaintiff] would not be able to recover here." *Id.* at 190- 191, 87 S.Ct. 357 (footnote omitted). However, because that "disability would flow from the conclusion of the Florida Legislature that suits on Florida judgments should be barred after that period[,]" the Court further explained that "Georgia's construction of" its five year statute of limitations for foreign judgments "insured, rather than denied . . . full faith and credit[]" to Florida's judgment. *Id.* Likewise, the Watkins Court found that Georgia's statutory scheme did not amount to a denial of equal protection in that it "relie[d] upon the judgment State's view of the validity of [its] own judgments." *Id.*

In addition to Watkins, the Irby court found the "court's reasoning in *Yorkshire West Capital* helpful, . . . although not controlling authority[.]" Irby, 2008 WL 2561958, at *4. In Yorkshire West Capital, 149 P.3d 1088, the issue was "whether a foreign [Texas] judgment filed in Oklahoma in 1996, may be refiled in Oklahoma while it is still valid and enforceable in the state in which it was granted [Texas], notwithstanding [an Oklahoma statute] which provides that judgments become unenforceable after five years when specified collection activities have not occurred." *Id.* at 1089. Moving to vacate that refiled Texas judgment, the defendant argued that "once the judgment became unenforceable in Oklahoma, . . . it could not be revived in Oklahoma by refiling." *Id.*

Disagreeing, the Yorkshire West court found "that the law in Oklahoma requires that a foreign judgment which is valid and enforceable in the issuing state may be filed as a new judgment in

Oklahoma, even where the same foreign judgment has previously been filed and become dormant in Oklahoma." _Id._ at 1092. In holding that plaintiff could file the Texas judgment "a second time in Oklahoma[,]" the court explained that "[t]he judgment's validity in the issuing state [wa]s paramount, and that nothing in the [Uniform Enforcement of Foreign Judgments Act ("UEFJA")] expressly prohibit[ed] a second filing of judgment." _Id._ At 1093. Thus, because plaintiff's Texas judgment "remained valid and enforceable" in 2005 when it refiled that judgment in Oklahoma, the court held that that "[re-]filing resulted in a second Oklahoma judgment which remain[ed] enforceable" under an Oklahoma statute limiting the enforceability of judgments to five years. _Id._ at 1090; 1093.

The _Irby_ court expressly "adopt[ed]" the "same rationale" as the _Yorkshire Capital_ court, finding it to be "consistent with the court's reasoning in _Watkins_, which _is_ controlling." _Id._ at *5 (emphasis in original). The _Irby_ court reinforced its reasoning by pointing out that the parties did not "dispute that, while . . . the California Code . . . contemplate[s] a ten year enforcement period and statute of limitations regarding registered judgments, respectively, there is no statutory provision that expressly _prohibits_ the second registration of an otherwise valid foreign judgment." _Id._ (emphasis in original). "All" of the foregoing "supports the conclusion[,]" the _Irby_ court held, "that, even though the [California Code] bar[red] plaintiff's enforcement of the 1996 registration of the underlying Texas judgment, plaintiff's timely renewal of the underlying judgment in Texas and subsequent re-registration of the same judgment in California, is permissible." _Id._

The _Irby_ court recognized "that allowing plaintiff to file her judgment a second time permits plaintiff to circumvent California's statutory enforcement scheme, since California law expressly contemplates that, once a judgment is registered, that judgment will necessarily expire after 10 years unless it is either renewed, or an action upon it is taken, with no other possibilities enumerated." _Id._ at *5 (citations omitted). Of far more import to the _Irby_ court, however, was the fact "that California's statutory enforcement provisions take no position with respect to the re-registration of a valid judgment." _Id._

Finally, because plaintiff had been attempting to execute upon her judgment for two decades, and had "been diligent in her efforts" in pursuing defendant, whereas the defendant "presented no explanation for his efforts to avoid enforcement of the judgment[,]" the _Irby_ court found that the "equities . . . tilted in favor of allowing plaintiff to re-register the underlying Texas judgment." _Id._ (citation omitted). Based upon the foregoing, the _Irby_ court denied defendant's motion to vacate plaintiff's re-registration of the Texas judgment in the California federal district court.

Two factors are determinative in assessing whether re-registration of a foreign judgment is proper under 28 U.S.C. § 1963, as _Irby_ shows. The first is whether the judgment remains enforceable in the rendering state. The second is whether the law of the registering state expressly prohibits re-registration of a judgment. In the present case, both factors compel a finding that on April 5, 2007, Fidelity permissibly re-registered its Arizona judgment under section 1963.

- 45 -

The California Code "defines the period for enforceability of judgments, and provides that a money judgment may not be enforced after the expiration of 10 years following the date of entry of the judgment." _Id._ at *3 (citing Cal.Code Civ. Proc. § 683.020). Fidelity's California judgment was entered in the California federal court on July 12, 2002. Defs.' RJN, exh. I thereto (Doc. 328-9) at 8. Therefore, in accordance with section 683.020, that judgment remains enforceable in California for ten years, that is, until July 12, 2012. Accordingly, when Fidelity filed its second Certification here on April 5, 2007, the underlying California judgment was still enforceable in California.

What is more, in sharp contrast to _Irby_, when Fidelity re-registered its judgment here in 2007, the previously registered judgment had not expired by operation of Arizona law, as had the California registered judgment in _Irby_. In Arizona, a judgment is enforceable in the first instance "at any time within five years after _entry of that judgment_[.]" A.R.S. § 12-1551(A) (emphasis added). In accordance with that statute, Fidelity's Arizona judgment, first registered on November 18, 2002, was thus enforceable for five years, or until November 18, 2007. Plainly when Fidelity re-registered it Arizona judgment on April 5, 2007, that judgment remained enforceable under Arizona law. Thus, when Fidelity re-registered its Arizona judgment, not only was the underlying California judgment still enforceable in California, but its Arizona judgment also remained enforceable here. The fact that Fidelity's judgment was enforceable in both the originating (California) and the registering (Arizona) states, provides an even more compelling reason for allowing re-registration under section

1963 than did _Irby_, where the California registered judgment had become dormant in the ten years after its original registration. This action presents no such dormancy issue.

Also, because the Arizona judgment still was enforceable in Arizona when Fidelity re-registered it, the court cannot agree, as the Friedmans urge, that allowing re-registration renders Arizona's renewal statutes meaningless. _See_ Defs.' Reply (Doc. 332) at 6:22-23. The Friedmans' contention would carry more weight if Fidelity had re-registered its Arizona judgment after the expiration of the renewal time under Arizona statutes, but Fidelity did not.

Furthermore, as in _Irby_, there is nothing in Arizona law, including its UEFJA, "expressly _prohibit_[ing] the second registration . . . of an otherwise valid foreign judgment." _See_ _id._ at *5 (emphasis in original). The absence of such a statutory prohibition bolsters the conclusion that Fidelity permissibly re-registered its Arizona judgment under 28 U.S.C. § 1963 by filing a second Certification of Judgment in this court on April 5, 2007.[15]

### _2. Timeliness_

Having found that 28 U.S.C. § 1963 allows for "re-registration" of a judgment under the particular facts of this case, the issue now is whether that "re-registration" was timely, as Fidelity claims. Section 12-544(3) requires that an action "[u]pon a judgment . . . rendered without the state" be "commenced

---

[15] This court is acutely aware, as the Friedmans emphasize, that the _Fidelity III_ court indicated that "'[w]hen a judgment creditor fails to utilize either of these statutory alternatives [renewal by affidavit or a common law action on the judgment], its resultant inability to enforce the original judgment in Arizona is compelled by law.'" _See_ Defs.' Mot. (Doc. 327) at 6:13-14 (quoting _Fidelity III_, 238 P.3d at 122 (defendants' emphasis omitted). The court does not read that language to suggest, as the Friedmans strongly imply, that failure to comply with Arizona state renewal statutes precludes re-registration of an otherwise valid, enforceable judgment under federal law.

. . . within four years after the cause of action accrues[.]"
A.R.S. § 12-544(3).  Equating "re-registration" with such an
action, the parties agree that section 12-544(3) provides the
applicable statute of limitations; and so, too, will this court.
Cf. Juneau Spruce Corporation v. I.L.W.U., 128 F.Supp. 697 (D.Haw.
1955) (citation omitted) (Section 1963 "supplies an equivalent
remedy to a suit upon a judgment.  It has the same effect as a
judgment of the local forum, . . .  Therefore, although different
from a suit upon a judgment, registration is designed to achieve
the same result and the legal principles of a suit upon a judgment
are generally applicable to problems that may arise from
registration.")

The parties disagree as to when a cause of action accrues
under A.R.S. § 12-544(3), however.  Fidelity focuses on finality of
a judgment, whereas the Friedmans focus on enforceability.  As it
turns out, both factor into determining the accrual date under
section 12-544(3), but, for the most part, not for the reasons
which the parties proffer.

Heavily relying upon Day v. Wiswall, 11 Ariz.App. 306, 464
P.2d 626 (App. 1970), Fidelity maintains that finality of a
judgment is determinative of the accrual date for a section 12-
544(3) cause of action.  In Day, the plaintiff sought to enforce a
California state court judgment in an Arizona state court.
Defendants countered that section 12-544(3)'s four year statute of
limitations barred that action.  Because "[i]n an action on a
foreign judgment[,] its validity and finality are to be tested by
the law of the jurisdiction where such judgment was rendered[,]"
the Day court looked to section 1049 of the California Code.  Id.

at 313, 464 P.2d at 633 (citation omitted). Defining a "pending action," section 1049 states in pertinent part:

> An action is deemed pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed[.]

Id. (quoting Cal. Civ. Proc. § 1049). Mainly based upon that definition, and with no analysis, the Day court "h[e]ld that the limitation period set forth in A.R.S. § 12-544[(3)], does not begin to run against an action on a foreign judgment until its final determination on appeal or until the time for appeal has passed[,] . . . since no 'cause of action' accrues until the judgment is final." Id. (citations omitted).

Applying the Day reasoning here, Fidelity maintains that the California judgment did not become final until May 15, 2003, the dismissal date of the Friedmans' appeal to the Ninth Circuit. Therefore, according to Fidelity, its April 5, 2007, re-registration was timely "because it was on a date within four years of the date th[at] . . . appeal was dismissed and the California judgment became final." Pls.' Resp. (Doc. 329) at 11:6-7.

Fidelity's reliance upon Day is unavailing for a host of reasons. Succinctly put, Day has no bearing upon the present case because: (1) a state, not a federal, court judgment was at issue; (2) Fed.R.Civ.P. 54 and 58 preempt the California state statute which formed the basis for Day's holding that a section 12-544(3) cause of action accrues when a judgment becomes final on appeal; (3) Day did not involve, as does this action, how the failure to post a bond on appeal impacts a judgment's enforceability; and (4) in Grynberg v. Shaffer, 216 Ariz. 256, 260, 165 P.3d 234, 238 (App. 2007), the court expressly "rejected . . . Day."

Of these reasons perhaps the most significant, and the one which the parties almost completely overlooked, is that <u>Day</u> involved a California state court judgment and, not, as here, a federal court judgment. That distinction is important because, *inter alia*, instead of looking to California state law, as did the <u>Day</u> court and as Fidelity suggests, this court must look to federal law in determining finality and enforceability for purposes of section 12-544(3)'s statute of limitations. Consequently, section 1049 of the California Code, which formed the basis for the holding in <u>Day</u>, is not germane here. The distinction between a federal, as opposed to a California state, judgment has broader implications than simply rendering <u>Day</u> inapplicable, as will soon become evident.

There are three other compelling reasons why <u>Day</u> is not controlling here. The first is that as the court in <u>Leuzinger v. County of Lake</u>, 253 F.R.D. 469, 471 (N.D.Cal. 2008), soundly reasoned, Federal Rules of Civil Procedure 54 and 58 preempt section 1049 of the California Code. After entry of a judgment in a California federal district court, plaintiff Leuzinger sought to execute upon her judgment in that same court. As does Fidelity, the defendant in <u>Leuzinger</u> argued, among other things, that section 1049 of the California code barred plaintiff from executing upon her judgment until a final determination of defendant's appeal. <u>Id.</u> at 470. Examining when a federal court judgment becomes final, however, the <u>Leuzinger</u> court began by parsing Federal Rules of Civil Procedure 54 and 58.

"Under Rule 54, a 'judgment'. . . includes . . . any order from which an appeal lies." <u>Id.</u> at 471. Rule 58 governs "[t]he

actual date of a 'final judgment,' however[.]" <u>Id.</u>  That Rule also

"define[s] what it means for a final order or judgment to be

entered[:]

> Under Rule 58(a)[e]very judgment . . .
> must be set out in a separate document. . . .
> When Rule 58(a) requires a separate document,
> then judgment is 'entered' when it is entered
> in the civil docket under Rule 79(a) and the
> earlier of these events occurs: (A) it is set out
> in a separate document; or (B) 150 days have run
> from the entry in the civil docket.

<u>Id.</u> (internal quotation marks, citations and footnote omitted).

The <u>Leuzinger</u> court "entered judgment as a separate document, on

its civil docket, on October 31, 2007[.]" <u>Id.</u> (citation omitted).

The <u>Leuzinger</u> court thus reasoned that "a 'final judgment' as

defined by rule 54, was 'entered' by the Court, as defined by Rule

58, . . . , on October 31, 2007." <u>Id.</u>

Despite the clear import of Rules 54 and 58, much like

Fidelity, the defendant in <u>Leuzinger</u> argued that the court should

apply section 1049 of the California Code and find that the

judgment against it would not become final until a final

determination of its appeal. <u>Id.</u> at 472.  Rejecting that argument,

the <u>Leuzinger</u> court found that Rules 54 and 58 preempt conflicting

section 1049.  In so holding, the court recited the settled

principle that "federal courts apply state *substantive* law but

federal *procedural* law." <u>Id.</u> (citing, *inter alia*, <u>Hanna v. Plumer</u>,

380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).  "Thus,

when a Federal Rule of Civil Procedure governs a situation, the

Court applies the rule, even if in direct conflict with relevant

state law[,]" unless, of course, that rule violates the Rules

Enabling Act.  <u>Id.</u> (citation omitted).

That Act "requires [that] a rule of procedure 'shall not abridge, enlarge or modify any substantive right.'" Id. (quoting 28 U.S.C. § 2072(b)) (other citation omitted). The test adopted by the Supreme Court for determining whether a given rule "relates to the 'practice and procedure of the district courts[]'" is "whether a rule really regulates procedure, --the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Hanna, 380 U.S. at 1140, 85 S.Ct. 1136 (internal quotations and citation omitted). Finding that "Rules 54 and 58 which merely define when a judgment is 'final and 'entered,' respectively, clearly pass th[at] test[,]" the Leuzinger court applied those Rules "even in the face of conflicting California law[,]" *i.e.* section 1049. Leuzinger, 253 F.R.D. at 472.

That preemption argument applies with equal force here where Fidelity is attempting to enforce a federal, not a state, court judgment. Leuzinger thus seriously erodes the continuing vitality of Day,[16] as well as showing even more clearly Day's irrelevancy to this case where enforcement of a federal judgment is at issue.

Third, Day does not govern the present case because the plaintiffs there did not commence their action to enforce under section 12-544(3) until *after* the California judgment was finally decided on appeal. The Day court thus had no need to consider, as does this court, the effect of the failure to post a bond pending appeal upon the enforceability of a judgment.

---

[16] Although Leuzinger was decided many years after Day, that does not render the former any less applicable. That is because the court's analysis in Leuzinger was based strictly on the text of Rules 54(a) and 58, which for present purposes has remained essentially unchanged through the years.

- 52 -

Lastly, this court gives no credence to Day because its precedential value also is highly doubtful in light of Grynberg v. Shaffer, 216 Ariz. 256, 165 P.3d 234 (App. 2007), a case which Fidelity and the Friedmans both mention. The Grynberg court unequivocally "rejected the reasoning and conclusions reached . . . in *Day*." Id. at 260, 165 P.3d at 238.[17] In Grynberg, a Colorado state court issued a pre-judgment interest order in May 2001, and that judgment was affirmed in 2003. In January, 2006, the judgment-creditor registered his Colorado judgment in an Arizona state court under Arizona's UEFJA.

Although agreeing that section 12-544(3)'s statute of limitations "begins to run when the cause of action accrues, which is the date on which the foreign judgment is entitled to full faith and credit in Arizona[,]" in Grynberg, the parties "disagree[d] as to when the Colorado judgment was final and entitled to full faith and credit." Id. at 257, 165 P.3d at 235 (citation omitted). "Because the judgment of a sister state must be final before full faith and credit attaches," the Grynberg court "look[ed] to Colorado law to determine when the judgment in th[at] case became final." Grynberg, 216 Ariz. at 258, 165 P.3d at 236 (citation omitted). Under Colorado law, "an appeal to the Colorado appellate court may be taken from a 'final judgment' of the district court." Id. (citing Colo.App. R.1(a)(1)). Further, in accordance with Colo. R. Civ. P. 62(d), "execution upon that judgment will not be stayed unless the judgment-debtor files a supersedeas bond." Id.

---

[17] Cf. Menken v. Emm, 386 Fed.Appx. 599, 600 (9th Cir. 2010) (citations omitted) (describing Grynberg as "provid[ing] . . . clarity" after Day, and noting that "because of *Day*'s imprecise language[,]" it "was at least debatable before *Grynberg* . . . [w]hether *Day* . . . created a standard that looked to the foreign state's finality rule, or instead created a rule that the statutory period always runs from the end of the appellate process[]").

- 53 -

(citations omitted).  That Rule further "permits execution upon such final judgments to begin fifteen days after the judgment has been entered, even if an appeal has been taken, unless a supersedeas bond has been filed."  Id. (citation omitted).

Based upon the foregoing, because the judgment-debtor "did not file a supersedeas bond in Colorado while the appeal was pending[,]" the Grynberg court found that "execution of the judgment in Colorado was not stayed during the appeal and was enforceable fifteen days after the judgment was entered in May 2001."  Id.  Given that "the Colorado judgment was final in May 2001," the Grynberg court affirmed the granting of defendants' motion to vacate the judgment because the judgment-creditor's "January 2006 registration was not within [A.R.S. § 12-544(3)'s] four-year statute of limitations[]" for enforcement of foreign judgments.  Id. at 260, 165 P.3d at 238.

Adhering to its view that Day provides the applicable rule of law, Fidelity attempts to distinguish Grynberg on a variety of grounds.  None are persuasive, however, primarily because a federal, not a state, court judgment is at issue here.  So for example, it matters not, as Fidelity stresses, that the Grynberg court was examining Colorado law, whereas Day looked to California law in determining the accrual date for an action to enforce a foreign judgment pursuant to A.R.S. § 12-544(3).  Moreover, because Fidelity's judgment was rendered in a California federal, as opposed to a state, court, the law of that jurisdiction is determinative of finality and enforceability – a principle which both the Day and Grynberg courts invoke.  See Grynberg, 216 Ariz. at 259, 165 P.3d at 237 ("[A] foreign judgment becomes enforceable

in Arizona when it has become enforceable in the rendering state[.]"); <u>Day</u>, 11 Ariz.App. at 313, 464 P.2d at 633 (citation omitted) ("In an action on a foreign judgment its validity and finality are to be tested by the law of the jurisdiction where such judgment was rendered.")  In short, Fidelity's reliance upon <u>Day</u> is unavailing.  Accordingly, this court declines to follow <u>Day</u> and find, as Fidelity so strongly urges, that its judgment became final for section 12-544(3) purposes on May 13, 2003  – the dismissal date of the Friedmans' appeal.

Fidelity is not alone in improperly relying upon California state law; the Friedmans did as well.  Presuming that California state law governs the enforceability of this federal court judgment, the Friedmans contend that because they did not "file a supersedeas bond[]" under section 917.1(a) of the California Code, Fidelity's "Judgment was enforceable long before the appeal was dismissed."  Defs.' Reply (Doc. 332) at 5:7-8.  In fact, according to the Friedmans, "Fidelity recognized and acted upon *this rule* in registering the California judgment in Arizona in 2002 and commencing collection proceedings almost immediately."  Defs.' Reply (Doc. 332) at 5:9-10 (emphasis added).  The Friedmans are correct in terms of the impact of not filing a supersedeas bond, but they are incorrectly relying upon section 917.1(a).  That is because, as with section 1049 of the California Code, the <u>Leuzinger</u> court held that the Federal Rules of Civil Procedure preempt section 917.1(a).

More specifically, the <u>Leuzinger</u> court found that Fed.R.Civ.P. 62(d) preempts that section of the California Code.  Leuzinger "argued that Fed.R.Civ.P. 62(a) and (d) allow[ed] her to enforce

her judgment while the [defendant's] appeal [wa]s pending, as [it] had not filed a supersedeas bond." Leuzinger, 253 F.R.D. at 470 (citation omitted). Agreeing with plaintiff, the court first focused upon Rule 62(a), which at that time read in relevant part, "[e]xcept as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 10 days have passed after its entry."[18] Fed.R.Civ.P. 62(a). Prior to December 1, 2009, Rule 62(a) thus dictated that "'a judgment of a United States District Court becomes final and enforceable ten days after judgment is entered.'" Id. at 472 (quoting Columbia Pictures TV v. Krypton Broadcasting, 259 F.3d 1186, 1197 (9th Cir. 2001)). Counting pursuant to the then operative provisions of Rule 6(a)(2),[19] the Leuzinger court held that plaintiff's judgment was "final and enforceable on November 14, 2007[]" – ten days after its October 31, 2007 entry. Id.

Shifting to Rule 62(b), the Leuzinger court looked to Rule 62(b) because it "addresses how an appeal affects the date on which a judgment become[s] final and enforceable." Id. at 473. The court explained:

> Except for certain equitable types of actions inapplicable here, [i]f an *appeal* is *taken*, the appellant may *obtain* a *stay by supersedeas bond*. . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. . . . The stay takes effect when the court

[18] The 2009 amendments to the Federal Rules of Civil Procedure, effective December 1, 2009, revised Rule 62(a)'s time from 10 to 14 days. See Fed.R.Civ.P. 62 2009 Amendments.

[19] Until December 1, 2009, under Rule 6(a) all deadlines for periods of less than 11 days were computed in the same way; the day of the event that triggers the deadline was excluded, but all intermediate Saturdays, Sundays and legal holidays were included. See Fed.R.Civ.P. 6(a)(1) 2009 Amendments.

> approves the bond. . . . *In lieu* of *seeking a stay* in a *district court*, a party *may seek a stay* in the *Court of Appeals*.

*Id.* at 473 (internal quotation marks and citations omitted) (emphasis added).  On March 3, 2008, defendant filed its appeal in *Leuzinger*, but it "never requested a stay nor posted a bond of supersedeas, under Rule 62(d), in th[at] Court, nor under Rule 62(g), in the Ninth Circuit."  *Id.* (footnote omitted). Consequently, "under Rule 62, Leuzinger's judgment remain[ed] final and enforceable as of November 14, 2007[,]" even though defendant's appeal had not been finally determined at that time.  *Id.*; *see* *also* *A. Coolot Co. v. L. Kahner & Co.*, 140 F. 836 (9th Cir. 1905) ("A judgment is none the less a final judgment, within the meaning of the rule requiring judgments to be final in order to sustain an action thereon, because an appeal is pending, if no supersedeas bond on appeal is given.")

The preemption of section 917.1(a) notwithstanding, *Leuzinger* does lend support to the Friedmans' broader contention that because they did not file a supersedeas bond, Fidelity's judgment was enforceable before the dismissal of their appeal.  As earlier noted, Fidelity's registration of its California judgment in this court under 28 U.S.C. § 1963, was "the functional equivalent of obtaining a new judgment of the registration court."  *See* *Hilao*, 536 F.3d at 989 (citations omitted).  By extension then, in accordance with Rules 54 and 58, Fidelity's Certification of Judgment (with attached copy of its California judgment) became final on its entry date -- November 18, 2002.  *See* *Leuzinger*, 253 F.R.D. at 471.

Finality alone is not dispositive of when a cause of action

accrues under A.R.S. § 12-544(3), as earlier discussed.
Enforceability also factors into the accrual determination.  It is
undisputed that the Friedmans did not post a supersedeas bond or
seek a stay as Rules 62(d) and 62(g) permit, respectively.
Therefore, adopting the reasoning in <u>Leuzinger</u> and relying upon the
2002 version of Fed.R.Civ.P. 62, Fidelity's newly registered
judgment became enforceable ten days after its entry.  Counting
pursuant to Rule 6(a) as then in effect, *i.e.*, excluding
intermediate Saturdays, Sundays and legal holidays, and based upon
the November 18, 2002, entry date, Fidelity's Arizona judgment
became enforceable on December 3, 2002.  Again, assuming as do the
parties, that the four year statute of limitations in A.R.S. § 12-
544(3) supplies the time frame for re-registering a judgment under
28 U.S.C. § 1963, Fidelity thus had until December 3, 2006, by
which to re-register its judgment.  <u>See</u> <u>Hilao</u>, 536 F.3d at 989
("The effect" of registering a judgment under section 1963 "is to
allow *that* judgment, i.e., the newly registered judgment, to be
enforced for the period allowed by the law of *that* forum, i.e., the
state of registration) [Arizona][.]")  But, Fidelity did not do so.
Fidelity did not even attempt to "re-register" its judgment until
April 5, 2007, when it filed the 2007 Certification.  That re-
registration was not timely, however.

In sum, because Fidelity did not timely file a renewal
affidavit as Arizona law requires, and because it did not timely
"re-register" its Arizona judgment, the court hereby **ORDERS** that:

(1) defendants' "Request for Ruling Consistent with Ninth
Circuit Mandate" (Doc. 327) is **GRANTED**; and

(2) that plaintiffs' "Certification of Judgment for

- 58 -

Registration in Another District (dated January 1, [sic] 2007) and Renewal of Judgment in District of Arizona" (Doc. 148) is **VACATED**.

DATED this 1st day of March, 2012.

Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record